NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GREEN TREE SERVICING, LLC,    )
                              )
          Appellant,          )
v.                            )          Case No.  2D14-660
                              )
ERIN C. MILAM and WILLIAM BRETT )
MILAM,                        )
                              )
          Appellees.          )
_____)

Opinion filed July 29, 2015.

Appeal from the Circuit Court for
Hillsborough County; Perry Little, Senior
Judge.

Kimberly Hopkins of Shapiro, Fishman
& Gaché, LLP, Tampa, for Appellant.

Mark P. Stopa of Stopa Law Firm,
Tampa, for Appellees.


SALARIO, Judge.

          Green Tree Servicing, LLC, appeals from a final summary judgment

entered in favor of borrowers Erin and William Milam in a residential foreclosure action.

Green Tree is a mortgage servicer that was substituted as plaintiff in place of National

City Mortgage, the Milams' original mortgage lender.  The appeal centers on whether,

before filing the complaint, National City complied with paragraph twenty-two of the

mortgage, which required that it notify the Milams of their default on the note and their rights in connection with that default. The trial court granted the Milams' motion for summary judgment because it found that National City failed to inform them of their right to reinstatement and to contest default and assert defenses in any foreclosure litigation. We disagree, hold that the default notice substantially complied with paragraph twenty-two, and reverse.

**I.**

**A.**

On May 16, 2007, the Milams borrowed $318,250 from National City to finance the purchase of a residence in Tampa. That debt was evidenced by a note and secured by a mortgage on the property. Regular payments of principal and interest were due to be received at an address specified in the mortgage on the first of each month, and failure to make payment as required was deemed a default on the note and mortgage. In the event of a default, National City had the right to accelerate payment of all sums due under the note—i.e., to demand immediate payment of the full amount of principal and interest—and foreclose on the mortgage.

Notwithstanding acceleration or foreclosure, the mortgage entitled the Milams to reinstate their mortgage if they fulfilled certain conditions. Those conditions included (1) paying all sums due under the mortgage as if no acceleration had occurred; (2) paying all expenses incurred by National City in enforcing the mortgage; and (3) taking any other actions National City reasonably required to ensure that its rights remain unchanged.

Before National City could accelerate or foreclose, it was required to give thirty days' written notice to the Milams. Paragraph twenty-two of the mortgage states that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

The Milams failed to make their November 1 and December 1, 2008, mortgage payments. On December 10, 2008, National City sent a letter to the Milams demanding that they cure the default within thirty days—by January 9, 2009. It read, in relevant part, as follows:

> [I]t is our duty to notify you that you have breached or defaulted in the performance of your obligation under the Note and Mortgage evidencing and securing your loan in the following respect:
>
> *Monthly installment payments have not been made including the payment for November 1, 2008.*
>
> The action required to cure the breach or default mentioned above on or before **January 09, 2009** is as follows:

> ***Payment in certified funds of $9,683.75 which includes
> the 111/2009 [sic] installment and applicable late
> charges, property inspection and non-sufficient funds
> fees.***
>
> Failure to cure the breach or default by said date, will result
> in the acceleration of the maturity date of the N o [sic], in the
> declaration that all sums secured by the Deed of Trust are
> immediately due and payable, and in this matter being
> referred to our attorney for whatever action is deemed
> appropriate and necessary. Should a foreclosure
> commence, with a resultant sale of the property, you may be
> liable for any deficiency balance, as provided by law.
>
> ***After acceleration you may still have the right to
> reinstate by paying all amounts due, as provided in your
> Note and Mortgage, and all NCM's expenses, including
> reasonable attorney's fees. You may also have the right
> to assert, in a foreclosure or other judicial proceeding,
> the non-existence of default or any other defense you
> may have to acceleration and foreclosure.***

(Emphasis added.) The Milams did not comply.

## B.

On February 23, 2009, National City filed a foreclosure complaint in the circuit court. On April 8, 2009, after the Milams failed to appear, the clerk entered a default against them. On December 9, 2009, the mortgage was assigned to Green Tree Servicing, LLC, which was thereafter substituted as the plaintiff.

On October 19, 2010, after receiving notice of a hearing on a motion for final summary judgment filed by Green Tree, the Milams appeared and moved to set aside the clerk's default. Green Tree did not oppose the motion, which the circuit court granted on October 25, 2010. The Milams thereafter filed an answer in which they made a general denial of all allegations of the complaint and asserted eight affirmative defenses, including that National City failed to give proper notice prior to filing the

- 4 -

foreclosure suit. Over the next eighteen months, the Milams changed lawyers and litigated, among other things, the parties' mediation rights and obligations, discovery, and a motion for summary judgment and for sanctions asserting discovery misconduct by National City and Green Tree, which the circuit court denied.

On March 25, 2013, the Milams changed lawyers a second time, and their new counsel filed a second answer. This answer contained specific denials of all material allegations of the complaint, including a denial of the complaint's allegation that all conditions precedent to suit had been fulfilled or had occurred. That denial also alleged that National City failed to give notice of the alleged default and an opportunity to cure as required by paragraph twenty-two.

On December 3, 2013, the Milams filed a motion for summary judgment alleging that National City failed to comply with the notice requirements of paragraph twenty-two before filing suit. In particular, they asserted that National City's December 10, 2008, notice letter failed (1) to specify the default; (2) adequately to apprise the Milams of their right to reinstatement; and (3) to state where payment should be sent.

At a hearing on the motion on January 9, 2014, without objection from National City, the Milams added to this list allegations that the notice improperly included the Milams' January 1, 2009, mortgage payment, which was not due at the time notice was sent, in the sum the notice required to be paid and failed to apprise them of their right to assert the nonexistence of a default and other defenses in a foreclosure suit, stating only that they may have that right. The circuit court announced that, while "I think I can live with" most of the defects alleged by the Milams, the failure to apprise the Milams of their rights to reinstatement and to defend foreclosure

- 5 -

proceedings was fatal. It entered an order granting the motion and dismissing the complaint without prejudice. This appeal timely followed.

**II.**

Summary judgment is proper where the movant conclusively demonstrates the absence of any genuine issue of material fact, a matter we review de novo. Laurencio v. Deutsche Bank Nat'l Trust Co., 65 So. 3d 1190, 1192 (Fla. 2d DCA 2011). The notice requirement of paragraph twenty-two, a standard mortgage provision, is a condition precedent to be satisfied by the lender prior to filing a foreclosure suit. Konsulian v. Busey Bank, N.A., 61 So. 3d 1283, 1285 (Fla. 2d DCA 2011). The question, then, is whether there is any genuine issue as to whether National City's December 10, 2008, letter satisfied that contractual condition such that it was entitled to file a foreclosure action. We turn first to the legal standard governing that question.

In this case, there is no dispute that National City delivered a paragraph twenty-two notice or that the notice provided thirty days to respond. Nor is there a dispute that the letter spoke to each of the five items in paragraph twenty-two: It stated (1) the default (nonpayment); (2) the action required to cure it (payment of $9683.75, which included the past due payments, the next payment, and certain fees and charges); (3) a date certain thirty days out by which the default was required to be cured (January 9, 2009); (4) the fact that failure to cure may result in acceleration and foreclosure; and (5) the Milams' rights to reinstatement and available defenses. The issues presented by the Milams go not to whether the letter spoke to each of paragraph

twenty-two's requirements but rather to whether what National City said was sufficient to satisfy them.

The Milams do not assert that they suffered any harm as a result of any deficiency in National City's notice letter, and they acknowledge that some of what they assert "might sound technical." Their position is that precision in fulfilling the condition precedent paragraph twenty-two establishes is required. The law calls this strict compliance. Green Tree asserts that, when strict compliance has not been tendered, substantial compliance is sufficient. Our cases do not resolve this dispute.[1]

Our cases are clear, however, that we are to interpret and apply the provisions of mortgages the same way we interpret and apply the provisions of any other contract. See, e.g., Creamer v. BAC Home Loans Servicing, LP, 159 So. 3d 168, 169 (Fla. 2d DCA 2015) (applying ordinary contract principles to interpret fees and costs provision in mortgage); Konsulian, 61 So. 3d at 1285 (interpreting paragraph twenty-two in accord with ordinary contract principles). In Florida, a party's adherence to contractual conditions precedent is evaluated for substantial compliance or substantial performance. See, e.g., Alvarez v. Rendon, 953 So. 2d 702, 708 (Fla. 5th DCA 2007) ("[T]here must be at least substantial performance of conditions precedent in order to

_____

[1]Our cases have generally dealt with situations where the lender has failed to prove that a notice was sent, the borrower was not provided with thirty days to cure, or the letter was silent about one or more of the requirements of paragraph twenty-two. See, e.g., DiSalvo v. SunTrust Mortg., Inc., 115 So. 3d 438, 441 (Fla. 2d DCA 2013) (reversing summary judgment in favor of lender where lender failed to prove that notice was sent); Judy v. MSMC Venture, LLC, 100 So. 3d 1287, 1289 (Fla. 2d DCA 2012) (reversing summary judgment in favor of lender where notice letter failed to state the default); Konsulian, 61 So. 3d at 1284 (reversing summary judgment in favor of lender where notice letter failed to include the default and foreclosure suit was filed three days after notice letter).

authorize a recovery as for performance of a contract." (alteration in the original) (quoting Cohen v. Rothman, 127 So. 2d 143, 147 (Fla. 3d DCA 1961))); Grover v. Jacksonville Golfair, Inc., 914 So. 2d 995, 996 (Fla. 1st DCA 2005) (affirming judgment on option agreement where "there was substantial performance of [the] conditions precedent" (alteration in the original) (quoting Racing Props., L.P. v. Baldwin, 885 So. 2d 881, 883 (Fla. 3d DCA 2004)) (internal quotation marks omitted)); Cmty. Design Corp. v. Antonell, 459 So. 2d 343, 346 (Fla. 3d DCA 1984) (affirming judgment for breach of contract where plaintiff "substantially performed" conditions precedent).  We see no reason—and the Milams do not offer one—why a condition precedent in a mortgage requiring notice prior to foreclosure should be treated differently.

The Milams do assert that the Fifth District rejected the notion that a substantial compliance analysis applies to paragraph twenty-two questions in Samaroo v. Wells Fargo Bank, N.A., 137 So. 3d 1127 (Fla. 5th DCA 2014).  In Samaroo, however, the lender's notice letter failed to speak to the right to reinstate at all—a violation of paragraph twenty-two's explicit requirement that a notice letter speak to that right.  Id. at 1129 (explaining that the letter "in no way suggests the right to reinstate after acceleration").  In light of the letter's silence on that subject, the Fifth District rejected the lender's argument that it had shown substantial compliance.  Id.  Contrary to the Milams' contention, the court did not hold that the doctrine of substantial compliance does not apply in the paragraph twenty-two context.  It merely held that the letter's silence on one of paragraph twenty-two's requirements precluded the lender's substantial compliance argument.

- 8 -

In this case, in sharp contrast, there is not a total failure to speak to any of paragraph twenty-two's requirements. The question here is whether what the letter did say was sufficiently accurate and complete. Samaroo does not suggest that this question should be evaluated for anything other than substantial compliance.[2] We note that courts in other jurisdictions have recognized that this is the appropriate test. See Mayo v. Wells Fargo Bank, N.A., No. 4:13cv163, 2015 WL 966042, at *6 (E.D. Va. Mar. 4, 2015) (holding that defects in letter did not bar foreclosure where "[t]he variance between the language of the Deed of Trust and the acceleration letters was not substantial and did not alter the borrower's rights"); Reese v. Provident Funding Assocs., LLP, 758 S.E.2d 329, 331 (Ga. Ct. App. 2014) ("Contrary to the Reese's [sic]

---

[2]After the instant case was argued, the Fifth District stated in dicta that a notice letter's variance from paragraph twenty-two will not preclude a foreclosure action "[a]bsent some prejudice." Gorel v. Bank of New York Mellon, 40 Fla. L. Weekly D1094, D1095 (Fla. 5th DCA May 8, 2015). In so stating, the court relied on Allstate Floridian Ins. Co. v. Farmer, 104 So. 3d 1242, 1248-49 (Fla. 5th DCA 2012), which held that an insurer may not deny coverage on the basis of an insured's failure to substantially comply with a policy provision requiring the submission of a proof of loss absent a showing of prejudice to the insurer. Because a coverage denial results in a forfeiture to the insured, prejudice appears to be the requirement in the insurance context for reasons that do not necessarily apply in other contexts. See State Farm Mut. Auto. Ins. Co. v. Curran, 83 So. 3d 793, 802 (Fla. 5th DCA 2011) ("[N]either the failure to timely report a claim, nor the breach of the duty to cooperate, gives rise to the automatic forfeiture of insurance benefits . . . ."); see also Am. Fire & Cas. Co. v. Collura, 163 So. 2d 784, 788 (Fla. 2d DCA 1964) ("In considering the question of breach of a cooperation clause in an insurance policy, it must always be borne in mind that in order for the company to avoid liability by reason of the insured's breach, the company must show that it has exercised diligence and good faith in bringing about the cooperation of the insured, and that it has in good faith complied with the terms and conditions of the policy. On the other hand, the insured is bound to cooperate with his insurer and to abide, both in letter and in spirit, with the terms of the contract; or he should at least be held to reasonably strict compliance with the terms thereof." (citations omitted)). There may be room for argument about whether prejudice is required with respect to contractual conditions precedent outside that context, but because we hold that the notice letter here substantially complied with paragraph 22, we need not address the issue here.

argument, the written notice sent to them . . . was sufficient because it substantially complied with the acceleration and remedies provision . . . . "); Fid. Bank v. Krenisky, 807 A.2d 968, 978 (Conn. App. Ct. 2002) (holding that lender's notice letter was sufficient where it substantially complied with notice provision of mortgage).

Substantial compliance or performance is "that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny" the other party the benefit of the bargain. Casa Linda Tile & Marble Installers, Inc. v. Highlands Place 1981 Ltd., 642 So. 2d 766, 768 (Fla. 4th DCA 1994) (quoting Ocean Ridge Dev. Corp. v. Quality Plastering, Inc., 247 So. 2d 72, 75 (Fla. 4th DCA 1971)); see also 15 Richard A. Lord, Williston on Contracts, § 44.52, 221-22 n.17 (4th ed. 2000) (explaining that substantial performance excuses a technical breach because "actual performance is so similar to the required performance that any breach that may have been committed is immaterial" (quoting Phoenix Mut. Life Ins. Co. v. Adams, 828 F. Supp. 379, 388 (D.S.C. 1993))). It is, in essence, the opposite of a material breach of contract that would excuse the nonbreaching party from its obligations. See Legacy Place Apartment Homes, LLC v. PGA Gateway, Ltd., 65 So. 3d 644, 644 (Fla. 4th DCA 2011) ("The doctrine of substantial performance is generally unavailable where a party has materially breached the terms of an agreement."); 15 Williston on Contracts, § 44:55 at 231. Indeed, Florida courts have sometimes evaluated compliance with conditions precedent by asking whether the alleged variation from the condition was material. See, e.g., AJH Prop. Invs. Ltd. v. SunTrust Bank, 89 So. 3d 948, 951 (Fla. 3d DCA 2012) ("Thus, the trial court never had the opportunity . . . to determine whether there was a material breach of the escrow agreement or whether

- 10 -

SunTrust had substantially complied."); Starling v. Allstate Floridian Ins. Co., 956 So. 2d 511, 513 (Fla. 5th DCA 2007) ("In other words, a material breach of an insured's duty to comply with a policy's condition precedent relieves the insurer of its obligations under the contract.").

Applying these principles to paragraph twenty-two, then, when the content of a lender's notice letter is nearly equivalent to or varies in only immaterial respects from what the mortgage requires, the letter substantially complies, and a minor variation from the terms of paragraph twenty-two should not preclude a foreclosure action. Where, on the other hand, the lender's notice letter varies from paragraph twenty-two in a way that goes to the essence of the parties' bargain, the variation is material and the lender has failed to satisfy a condition precedent to the foreclosure action. See, e.g., Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker, 160 So. 3d 955, 960 (Fla. 5th DCA 2015) (holding that a material breach "goes to the essence of the contract," and that "trivial noncompliance and minor failings" are not material breaches); Beefy Trail, Inc. v. Beefy King Int'l, Inc., 267 So. 2d 853, 857 (Fla. 4th DCA 1972) (same).

**III.**

Having decided that a lender's adherence to the requirements of paragraph twenty-two is reviewed for substantial rather than strict compliance, we first address the circuit court's stated basis for granting summary judgment—that the notice letter was defective because it informed the Milams only that they "may" have the right to reinstatement and to assert the nonexistence of a default and other defenses they

- 11 -

may have in foreclosure proceedings.  We treat the issues of reinstatement and defenses to foreclosure proceedings separately.

**A.**

As to reinstatement, the Milams contend the notice letter's use of conditional "may" fails to comply because paragraph twenty-two requires that the Milams be informed "of the right to reinstatement," which they say commands use of the word shall.  Our recent decision in U.S. Bank National Ass'n v. Busquets, 135 So. 3d 488 (Fla. 2d DCA 2014), although not available to the circuit court when it ruled on the Milams' summary judgment motion, resolves this issue against them.

In Busquets, the trial court granted summary judgment to a borrower based on its determination that the lender's notification that a borrower may have a right to reinstatement did not comply with paragraph twenty-two's requirement that the borrower be informed "of the right to reinstate."  Id. at 490.  We reversed and held that, because the right to reinstatement under the mortgage was conditional and not absolute, the use of the conditional term "may" was appropriate in describing that right. Id.  In particular, we emphasized that any reinstatement right the borrower enjoyed was, under the terms of the mortgage, contingent on the satisfaction of four conditions that may or may not be satisfied depending on the circumstances.  See id.  Because the reinstatement right was contingent on the existence or occurrence of those circumstances, use of the term "may" accurately informed the borrower about that right. Id.

For the same reasons, National City's use of the contingent term "may" to describe the Milams' reinstatement right was proper.  Specifically, as in Busquets, any

right the Milams had to reinstatement was contingent on the existence or occurrence of the conditions specified in paragraph nineteen of their mortgage. The Milams assert, however, that Busquets is distinguishable because, in that case, we noted that the notice letter also "advised [the borrower] to review the terms of his mortgage contract to determine the conditions under which he might be eligible for reinstatement," id., an additional fact the Milams assert was not present in the notice they received and is necessary here in order for Busquets to apply. Our observation in Busquets does not have the significance that the Milams attribute to it.

Simply put, our observation in Busquets about the letter's reference to the loan documents was not essential to its holding that the letter complied with paragraph twenty-two. Paragraph twenty-two obligates the lender to inform the borrower of the right to reinstatement. It does not obligate the lender to direct the borrower to the loan documents. What was central to Busquets was that the reinstatement right the letter described was contingent, making its use of the contingent term "may" to describe the availability of that right literally compliant with paragraph twenty-two. See id. at 490 (stating that a different result "would, in effect, misadvise Busquets of his rights by advising him that he had an absolute right in conflict with the conditional rights provision of the mortgage contract").

Furthermore, even if we had held in Busquets that paragraph twenty-two requires reference to the mortgage documents, the result in this case would be the same. National City's notice letter here informed the Milams that their right to reinstatement hinged on their "paying all amounts due, as provided in [the] Note and Mortgage." That language at least substantially complied with any asserted

requirement that the letter make reference to the mortgage documents by directing them to their note and mortgage to determine the contours of their reinstatement right. Either way, then, the notice letter in this case adequately informed the Milams of their right to reinstatement.

**B.**

As framed by the Milams, the argument with respect to notice of the right to assert the nonexistence of default and other defenses is essentially the same as their argument about notice of the right to reinstatement. Although <u>Busquets</u> did not address whether the term "may" sufficiently described a borrower's right to assert in the foreclosure proceeding the nonexistence of a default or any other defense, its reasoning applies to that issue with equal force.

Like the right to obtain reinstatement, the right to contest default and assert defenses is contingent on other circumstances—the existence of a basis to do so. A borrower has no right to assert in a judicial proceeding the nonexistence of a default or a defense to foreclosure without any factual or legal basis. To say that the Milams may have a right to assert the nonexistence of a default or other defenses is thus the equivalent of saying "if you have a basis to assert the nonexistence of a default or another defense, you may do so." Such a statement informs a borrower of his or her right in a judicial foreclosure proceeding to contest default and assert defenses.

That does not fully resolve this case, however, because National City's notice letter contained a second "may" with respect to the assertion of defenses. It stated that "[y]ou **may** also have the right to assert . . . any other defense you **may** have to acceleration and foreclosure." (Emphasis supplied.) A literal reading of the second

"may" in the sentence does not strictly comply with paragraph twenty-two because in judicial foreclosure proceedings borrowers do have the absolute right to assert those defenses they may have, subject to the rules of procedure and other applicable law.

But National City's notice letter did substantially comply with paragraph twenty-two. The purpose of the contractual requirement that a borrower be notified of his or her right to assert defenses—to ensure that borrowers are informed before suit is filed that they are not required to take a foreclosure complaint lying down and can defend the case if so inclined—is evident from the face of the document. See Krenisky, 807 A.2d at 978. National City's letter conveys that much to any reasonable reader and, for that reason, does not vary from the requirements of paragraph twenty-two in any material respect. Confirming that conclusion, the Milams themselves derived from National City's letter precisely the understanding paragraph twenty-two contemplates; after receiving the foreclosure complaint, they attempted to negotiate a modification and, thereafter, retained counsel and defended the action vigorously. The notice letter thus substantially complied with paragraph twenty-two, and it was error for the trial court to find the notice insufficient on this basis. See, e.g., Nationstar Mortg., L.L.C. v. Wagener, 2015-Ohio-1289 (Ohio Ct. App. Apr. 2, 2015) (holding that notice that informed borrower of right to bring a court action to contest default or assert defenses adequately informed borrower of right to assert defenses in a foreclosure proceeding where defendant actually appeared and asserted defenses).

**IV.**

The Milams argue that the circuit court's summary judgment should nonetheless survive on a right-for-the-wrong-reason rationale. See Curtis v. Tower Hill

- 15 -

<u>Prime Ins. Co.</u>, 154 So. 3d 1193, 1197 (Fla. 2d DCA 2015). As they did in the circuit court, they assert that National City's letter failed to (1) specify the default; (2) accurately compute the payment required to cure the default and reinstate the mortgage; and (3) specify the address to which that payment must be sent. We disagree that any of these issues render the notice deficient or support an affirmance of the summary judgment.

**A.**

The Milams assert that paragraph twenty-two's requirement that a notice letter "specify . . . the default" obligated National City to identify in its letter each monthly payment the Milams missed. Based on the plain language of paragraph twenty-two, we reject that argument. National City informed the Milams that they were in default because "monthly payments have not been made, including the payment for November 2008." A failure to make monthly payments is one of multiple ways in which a borrower can default, and the letter stated that this was the type of default alleged. It further identified the November 2008 payment, which was the first payment the Milams' missed. The next payment in December 2008 was missed as well, a fact that was known to or easily knowable by the Milams. Under these undisputed facts, the letter was sufficiently explicit and detailed to preclude any legitimate misunderstanding about the default alleged by the bank and, thus, to literally comply with the requirement that the notice letter "specify . . . the default." See <u>Fla. League of Cities v. Smith</u>, 607 So. 2d 397, 399 (Fla. 1992) (relying upon legal and other dictionary definitions defining "specify" as, among other things, "[t]o mention specifically" and "to point out" as well as a "statement explicit, detailed, and specific so that misunderstanding is impossible" (alteration in the original)). Furthermore, even assuming the contractual obligation to

- 16 -

specify the default could be read to require that each missed payment be listed, in a case like this one where the borrower has missed consecutive payments beginning with the one explicitly mentioned in the letter, the tendered performance was so close to the performance called for that any variation is without consequence, and National City substantially complied with the contractual notice provisions of the mortgage. See generally Casa Linda Tile, 642 So. 2d at 768 (concluding that it is unreasonable to deny the rights of a party to a contract where that party's performance "is . . . nearly equivalent to" the bargained-for performance (quoting Ocean Ridge Dev., 247 So. 2d at 75)).

**B.**

Speaking to paragraph twenty-two's requirement that a preacceleration notice "specify . . . the action required to cure the default," National City's December 10, 2008, letter stated that the required action was payment on or before January 9, 2009, in certified funds of $9683.75, which included the missed payments, the January 1, 2009, payment, and various fees and charges.[3] The Milams contend that the letter was fatally defective because the January 1, 2009, payment was not due when the letter was sent. Although the parties appear to assume that National City was not entitled under the note and mortgage to demand the January 1, 2009, payment as part of the

---

[3]The letter erroneously referred to the "111/2009 payment." However, a reasonable reader would not have interpreted this as referring to anything other than the January 1, 2009, payment, which was the next payment due. We reject the Milams' argument that this immaterial error requires dismissal of the case.

cure of the noticed default—a question we need not and do not decide—the letter substantially complied with paragraph twenty-two regardless.  Id.

The essential purpose of the requirement that a notice letter "specify . . . the action required to cure the default" is again clear from the face of the mortgage.  It ensures that the borrower is informed of the lender's determination of what the borrower must do to bring the loan out of default.  Although the January 1, 2009, payment was not due when the letter was sent on December 10, 2008, the payment was due on January 1, 2009, eight days before the due date specified in the letter.  Under the terms of the note and mortgage, the failure to make that payment would keep the loan in default.

The inclusion of the January 1, 2009, payment would have become relevant only if the Milams had intended to make payment of the past due sums and bring the loan out of default before the January payment came due.  There is no evidence of that here.  Moreover, the notice expressly stated that the January payment was included—it did not hide the ball—and if the Milams disagreed, the letter provided a phone number for the Milams to call to resolve any discrepancy over the amount required to get the loan out of default.[4]  Under these circumstances, the addition to a notice letter of a single payment that was due a few weeks after that letter was sent but

_____

[4]Relying on Singleton v. Greymar Associates, 882 So. 2d 1004 (Fla. 2004), the Milams argue that a default on the January 1, 2009, payment would be a separate default requiring a separate paragraph twenty-two notice.  Singleton held that "when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is not necessarily barred by res judicata."  Id. at 1006-07.  It does not follow that a borrower's continuing and uninterrupted failure to make monthly payments—as existed in this case—requires a new paragraph twenty-two notice letter for each instance in which the borrower fails to pay.

before the due date for cure is an immaterial variation from what paragraph twenty-two required. While there may be a case in which the lender's specification of the "action required to cure the default" is inaccurate in a way that precludes a finding of substantial compliance, this is not that case.

## C.

The Milams argue that paragraph twenty-two's requirement that National City's notice letter "specify . . . the action required to cure the default" required it to specify an address to which payment should be sent. On the contrary, under the plain language of the note and mortgage, the action required to cure the default is the payment of the sums due under those documents. A statement of the address to which payment must be sent is no more a statement of the action required to cure default than a statement that the envelope must be stamped or deposited into a mailbox. The action required to cure default is what the borrower must do to bring the loan out of default. As described above, National City's letter substantially complied with that obligation. Id.

Moreover, the address to which that payment was to be mailed was easily ascertainable by the Milams in one of two ways. The first was by reference to the terms of the note, which specified that monthly payments were to be made to the address stated therein or any other address identified in writing by the lender, and the mortgage, which stated that payments are deemed received by the lender when received at the location specified in the note. The second was by calling the customer care telephone number identified in the letter. Because the letter specified the action required to cure default and the ancillary information concerning the address was known to or easily

obtainable by the Milams, we conclude with no difficulty that National City's letter complied with the terms of paragraph twenty-two in this regard.

**V.**

Paragraph twenty-two is designed to ensure that a borrower receives essential information concerning his or her default, how to cure it, and his or her rights with respect to it. It is not a technical trap designed to forestall a lender from prosecuting an otherwise proper foreclosure action because a borrower, after the fact, decides that the letter might have been better worded. The notice letter here either actually or substantially complied with all of the requirements of paragraph twenty-two, and it was thus error for the trial court to enter summary judgment in favor of the Milams. Accordingly, we reverse the final summary judgment and remand the case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

WALLACE, J., Concurs.

CRENSHAW, J., Concurs in result only.