# Third District Court of Appeal

## State of Florida

Opinion filed May 17, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1268
Lower Tribunal No. 14-22598
_____

## University Housing by Dayco Corp.,
Appellant,

vs.

## Rogelio Foch, etc.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Coffey Burlington, P.L., and Robert K. Burlington and Daniel F. Blonsky, for appellant.

DLA Piper LLP, and Ryan D. O'Quinn and Michael A. Greenfield, for appellee.

Before ROTHENBERG, SALTER, and FERNANDEZ, JJ.

ROTHENBERG, J.

University Housing by Dayco Corporation ("UHDC") appeals the trial court's entry of a final summary judgment in favor of Rogelio Foch ("Foch"), as guardian of the person and property of Redovaldo Foch,[1] on UHDC's breach of contract and unjust enrichment claims. For the reasons that follow, we affirm.

## BACKGROUND

On May 17, 2013, Foch entered into a Memorandum of Agreement ("MOA") with Dayco Properties, LLP ("Dayco"). Pursuant to Article II of the MOA, Dayco was required to file the Articles of Organization for a new development company, obtain financing to construct a fifteen story student housing complex, and obtain a payment and performance bond in favor of the development company. Contemporaneous with Dayco's funding of the construction loan, the MOA obligates Foch to transfer title of real property owned by Foch's ward ("the Guardianship Property") to the new development company. However, on June 28, 2013, prior to forming and filing the Articles of Organization for a development company or obtaining the funding required under the MOA, Dayco purportedly assigned its interest in the yet to be formed development company to UHDC.

On July 3, 2013, Luis D'Agostino, the sole shareholder and sole director of UHDC, filed the Articles of Organization of the new development company, the

_____

[1] During the pendency of this appeal, Redovaldo Foch passed away, and Rogelio Foch, as personal representative of Redovaldo Foch's estate, has been substituted as the Appellee.

Suites at University City, LLC ("The Suites"). Neither Dayco nor UHDC has provided the funding for the project, as required by the MOA.

Despite the failure of either Dayco or UHDC to fund the construction project, UHDC demanded that Foch convey the Guardianship Property to The Suites and invoked Article III of the MOA, which permits Dayco or, based on the assignment, UHDC to "dispose" of its membership interest in the development company, The Suites, and to require Foch to likewise "dispose" of his membership interest in The Suites. Foch refused to convey the Guardianship Property to The Suites based on, among other grounds, Dayco's and/or UHDC's failure to fund the construction of the project.

On September 2, 2014, UHDC filed suit against Foch, and in its second amended complaint sought specific performance of the MOA based on Foch's failure to convey the Guardianship Property to The Suites. In the alternative, UHDC pled an unjust enrichment claim based upon the alleged benefit UHDC claims Foch has received as a result of UHDC's efforts regarding the project. Foch filed a motion for summary judgment on all of UHDC's claims, arguing, among other things, that: (1) UHDC lacked standing to bring a breach of contract action; (2) Foch was not obligated to transfer the Guardianship Property because UHDC failed to comply with conditions precedent in the MOA; and (3) UHDC's claim for unjust enrichment fails because Foch did not receive any benefit from UHDC.[2]

3

The trial court, interpreting the MOA, found that "the sine qua non of [Foch's] performance under the MOA was the conveyance of real property contingent upon performance of the enumerated specified conditions precedent by Dayco for purposes of complying with the requirements of the Capital Contribution provisions of the MOA." However, instead of filing the Articles of Organization for The Suites and performing its capital contribution obligations by securing funding for the project, Dayco assigned its interests to UHDC. The trial court also found that the purported assignment from Dayco to UHDC was invalid because, at the time of the assignment, Dayco's interest in The Suites did not exist and UHDC had not been created. Accordingly, the trial court concluded that Dayco never performed its obligations under the MOA and that UHDC lacked standing to bring this suit. The trial court additionally found that UHDC could not prevail on its unjust enrichment claim because all of the alleged benefits benefited The Suites and/or UHDC, not Foch, because The Suites is solely owned by UHDC. The trial court thus entered an order granting final summary judgment as to all of UHDC's causes of action, and UHDC appeals that order.

## ANALYSIS

We review the trial court's ruling on a motion for summary judgment de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla.

---

[2] Although the trial court also ruled on other motions for summary judgment in the same order, those rulings are not before us on appeal.

4

2000) ("Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law."). Where the resolution of the issues in the lawsuit depends on the construction and legal effect of a contract, "the question at issue is essentially one of law only and determinable by entry of summary judgment." Id. at 131 (quoting Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1096 (Fla. 1st DCA 1999)).

"Under well established contract law, a condition precedent is a condition which calls for the performance of an act after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend." Racing Props., L.P. v. Baldwin, 885 So. 2d 881, 882-83 (Fla. 3d DCA 2004). "A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract." Mitchell v. DiMare, 936 So. 2d 1178, 1180 (Fla. 5th DCA 2006). "Conditions precedent to an **obligation to perform** are those acts or events, which occur **subsequently to the making of a contract**, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." Land Co. of Osceola Cty., LLC v. Genesis Concepts, Inc., 169 So. 3d 243, 247 (Fla. 4th DCA 2015) (emphasis in original) (quotation omitted).

In the instant case, the MOA contains the following conditions precedent: "Upon execution of this AGREEMENT [Dayco] shall cause to be filed . . . Articles

of Organization for the Development Company, and to thereafter cause both private equity investment and commercial financing to be funded ('CONSTRUCTION LOAN') sufficient to complete the PROJECT in the manner agreed by the PARTIES." Section 2.02(B) contains a list of obligations which are to be performed "**[c]ontemporaneous** with funding the CONSTRUCTION LOAN." (emphasis added). One of the obligations to be performed contemporaneous with the funding of the construction loan is Foch's transfer and conveyance of the Guardianship Property to the development company.

Based on these unambiguous provisions in the MOA, the trial court correctly concluded that Dayco's obligation to secure financing for the project was the *sine qua non* of Foch's performance under the MOA. Specifically, Foch is not required to transfer the Guardianship Property until Dayco secures full funding for the project. The record reflects, however, that Dayco failed to perform its funding obligation, and instead assigned its interests to UHDC. UHDC has also failed to fund the project pursuant to the MOA. The failure to perform this condition precedent in the MOA by either Dayco or UHDC precludes recovery for breach of contract against Foch for his failure to transfer the Guardianship Property.

Although neither UHDC nor Dayco obtained the requisite funding for the project, UHDC argues that Section 3.02(F) of the MOA provides an alternative to the funding of the project. Section 3.02(F), provides that Dayco (and thus, UHDC)

6

may dispose of its interest by selling the project, and requires Foch to likewise dispose of his interest in the project. Thus, UHDC contends that it can sell the project, even if the project has not been fully funded, and it can force Foch to convey the Guardianship Property to The Suites.

Section 3.02(F), however, only provides for the disposition of the parties' "membership interests" in The Suites. Section 2.02(B)(4) specifies that Foch is to receive his membership interest contemporaneous with Dayco's performance of its obligation to obtain funding for the project. Because the project has not been funded, Foch has not obtained a membership interest in The Suites, and thus he has no membership interest to convey. Based on the plain language in the MOA, Section 3.02(F) is only triggered after the initial funding of the project occurs.

As to UHDC's claim for unjust enrichment, the trial court correctly concluded that any efforts made by UHDC inured to the benefit of The Suites, which is solely owned by UHDC. Because there is no evidence that Foch has received any benefit from UHDC's efforts, the trial court properly granted summary judgment as to UHDC's unjust enrichment claim. See Extraordinary Title Servs., LLC v. Fla. Power & Light Co., 1 So. 3d 400, 404 (Fla. 3d DCA 2009).

## CONCLUSION

7

Because neither Dayco nor UHDC complied with the MOA's condition precedent of securing the requisite funding for the project, Foch was not required to transfer the Guardianship Property. Accordingly, Foch cannot be liable for breach of contract based upon his failure to transfer the Guardianship Property. Additionally, we find that summary judgment was properly entered on UHDC's unjust enrichment claim. UHDC's remaining arguments are without merit.

Affirmed.