[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14450

Non-Argument Calendar

_____

RAMESH CHERUVOTH,

Plaintiff-Appellant,

versus

SEADREAM YACHT CLUB INC.,
SEADREAM YACHT CLUB LIMITED CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-24416-DPG

_____

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

This case requires us to consider whether a party who signed two contracts to charter a yacht and paid deposits under those contracts can later avoid the arbitration clauses contained in the agreements because of his own failure to abide by certain conditions precedent. Because of the limited scope of review of agreements falling under the New York Convention, and the well-established presumption favoring arbitration, we affirm the district court's order compelling arbitration in accordance with the clear terms of the parties' contracts.

## I

Ramesh Cheruvoth, a citizen of Saudi Arabia, filed suit in the Southern District of Florida against SeaDream Yacht Club, Inc., a Florida corporation, and SeaDream Yacht Club Limited Corporation, a foreign corporation registered and incorporated in the Bahamas. The complaint asserted various quasi-contract claims, including claims for quantum meruit, breach of implied contract, unjust enrichment, and breach of oral contract. Although Mr. Cheruvoth presented only quasi-contract theories, the parties' dispute arose out of two yacht charter agreements signed

by Mr. Cheruvoth on behalf of Abdullah Saleh Kamel in August of 2017 and July of 2018 (the "Agreements").[1]

The Agreements contain identical arbitration clauses that state in relevant part:

**Section 14, Governing Law and Venue:** This Agreement is governed by Norwegian law, except for Norwegian choice of law principles. All disputes arising out of or in connection with this Agreement shall be referred to arbitration in accordance with the Norwegian Arbitration Act 14 May 2004 no. 25. The arbitration court shall be composed of three arbitrators. The chairman shall be a Norwegian legal professional. The seat of the arbitral proceedings shall be in Oslo, Norway, and the proceedings shall be conducted in the English language.

After signing the Agreements and paying the required deposits, Mr. Kamel was unable to embark on either of the planned charters because he was being detained by the Saudi Arabian government. Rather than proceed to arbitration, Mr. Cheruvoth filed suit against the SeaDream defendants seeking the return of the deposits. The SeaDream defendants filed a motion to compel arbitration and dismiss the case, which the district court granted. This appeal follows.

**II**

---

[1] The parties agree that Mr. Kamel assigned all claims and causes of action related to this action to Mr. Cheruvoth.

We review the district court's order compelling arbitration *de novo.  See Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 985 n.1 (11th Cir. 2012) (citing *Lobo v. Celebrity Cruises, Inc.*, 488 F.3d 891, 893 n.1 (11th Cir. 2007)).

### III

We have stated that "federal courts interpret arbitration clauses broadly where possible." *Solymar Invs., Ltd.*, 672 F.3d at 988–89 (citing *AT&T Techs., Inc. v. Commn'cs Workers of Am.,* 475 U.S. 643, 649–50 (1986)). "The result of such broad interpretation is that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945 (1995)). *See also AT&T Techs., Inc.,* 475 U.S. at 650 ("Doubts should be resolved in favor of coverage."). The Supreme Court has instructed that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (the "Convention"), "is a multilateral treaty that addresses international arbitration." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (citation omitted). "In 1970, the United States acceded to the New York Convention, and Congress enacted implementing legislation in Chapter 2 of the FAA . . . [which] grants federal courts

jurisdiction over actions governed by the Convention." *Id.* (citing 84 Stat. 692, 9 U.S.C. §§ 201–08).

Article II of the Convention, which addresses arbitration agreements, states that "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them . . . ." T.I.A.S. No. 6997 (Dec. 29, 1970). Article II defines an "agreement in writing" as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Id.* Finally, Article II(3) states that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *GE Energy Power Conversion France SAS, Corp.*, 140 S. Ct. at 1644 (citation omitted).

In deciding a motion to compel arbitration under the Convention, courts conduct "a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir. 2005) (quoting *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 273 (5th Cir. 2002)). A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met, or (2) one of the Convention's affirmative defenses applies. *See Bautista*, 396 F.3d at 1294–95 (citations omitted). The four prerequisites require that "(1) there is an agreement in writing within the meaning of the Convention; (2)

the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* at 1295 n.7.

Rather than framing his arguments in the context of the Convention and its requirements, Mr. Cheruvoth simply maintains that the Agreements "were never formed" because the parties failed "to fulfill certain conditions precedent." Appellant's Br. at 2. Thus, according to Mr. Cheruvoth, the district court erred by compelling arbitration without first considering the issue of contract formation. The SeaDream defendants contend that the district court correctly ruled in their favor because Mr. Cheruvoth has not argued that any of the four jurisdictional prerequisites were not met and failed to raise any of the narrow affirmative defenses available at this stage under the Convention.

As we see it, all of Mr. Cheruvoth's arguments—although he does not present them as such—go to the first jurisdictional prerequisite: whether there is "an agreement in writing" under the Convention. By focusing solely on the issue of contract formation, Mr. Cheruvoth misapprehends both Supreme Court and Eleventh Circuit precedent, which make it clear that formation and arbitrability are often intertwined. In *Solymar*, we held that there is "a two-step process required in considering the arbitrability of any contract containing an arbitration clause: 1) resolution of any formation

challenge to the contract containing the arbitration clause, in keep-ing with *Granite Rock*; and 2) determination of whether any sub-sequent challenges are to the entire agreement, or to the arbitra-tion clause specifically, in keeping with *Prima Paint*." *Solymar Invs., Ltd.*, 672 F.3d at 990.[2]

As in *Solymar*, we first address the contract formation challenges raised by Mr. Cheruvoth (i.e., we determine whether there is, in fact, an "agreement in writing" between the parties). Mr. Cheru-voth argues that a valid contract was never formed between the parties because (1) Mr. Kamel signed the Agreements after the dates stated in the contracts, but (2) Mr. Kamel did not send a letter of credit and an original of the executed Agreements to the offices of the SeaDream defendants in Florida. This argument fails for two reasons.

First, Mr. Cheruvoth does not contest the veracity of the signatures or the existence of the Agreements in general. Under *Bautista*, his arguments about conditions precedent do not go to the threshold

---

[2] In *Solymar*, we laid out this two-step framework to reconcile the Supreme Court's decisions in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (holding that courts are the proper forum to evaluate a challenge to the validity of an arbitration clause, but that where the entire agreement of which an arbitration clause is but a part is challenged, such eval-uation is properly left to the arbitrator), and *Granite Rock Co. v. Int'l Broth-erhood of Teamsters*, 561 U.S. 287, 296 (2010) (explaining that issues concern-ing contract formation are generally reserved for the courts to decide as a threshold matter). Rather than finding a conflict between these cases, we de-termined that they simply required courts to undertake a two-step analysis.

issue of contract formation. *See Bautista*, 396 F.3d at 1300 ("Although Plaintiffs claim the crewmembers did not have an opportunity to review the entirety of the Standard Terms before signing, Plaintiffs do not dispute the veracity of the signatures. . . . Accordingly, this documentation fulfills the jurisdictional prerequisite that the court be provided with an agreement to arbitrate signed by the parties."). *See also Buckeye Check Cashing*, 546 U.S. at 448–49 (holding that validity challenges to an entire contract go to the arbitrator); *Benoay v. Prudential–Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986) (reserving for arbitrator consideration of certain claims regarding validity of underlying contract as opposed to validity of arbitration clause); *Chastain v. Robinson–Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992) ("Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration.").

Second, even if we were to consider the Agreements' conditions precedent under *Bautista*, we would find that the Agreements were formed. Under Florida law, "[a] condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract." *U. Hous. by Dayco Corp. v. Foch*, 221 So.3d 701, 704 (Fla. 3d DCA 2017) (quoting *Mitchell v. DiMare*, 936 So.2d 1178, 1180 (Fla. 5th DCA 2006)). *See Land Co. of Osceola County, LLC v. Genesis Concepts, Inc.,*

169 So.3d 243, 247 (Fla. 4th DCA 2015); *Lowe v. Nissan of Brandon, Inc.*, 235 So.3d 1021, 1026 (Fla. 2d DCA 2018).[3]

The first condition precedent at issue, from the first Agreement, reads: "This agreement is not binding until signed by both SeaDream and contractor and returned with a mutually agreed deposit by August 4, 2017." D.E. 13-1 at 1. Mr. Kamel signed the first Agreement on August 9, 2017. *See* D.E. 13-1 at 1. On that basis, Mr. Cheruvoth contends that "[p]ursuant to the terms of Agreement 1, it never became binding - i.e. was never formed - because it was not signed by the stated deadline." Appellant's Br. at 19.[4]

---

[3] In *Solymar*, we stated that under Florida law conditions precedent are not relevant to contract formation. *See Solymar*, 672 F.3d at 996. We would normally be bound by *Solymar's* interpretation of Florida law, but subsequent rulings by Florida appellate courts have cast doubt on that interpretation. *See EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017) ("[W]hen we have issued a precedential decision interpreting that state law, our prior precedent rule requires that we follow that decision, absent a later decision by the state appellate court casting doubt on our interpretation of that law."); *Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996) ("[I]f subsequent decisions of the United States Supreme Court or the Florida courts cast doubt on our interpretation of state law, a panel would be free to reinterpret state law in light of the new precedents.") (internal quotation marks omitted). Specifically, the Third, Fourth, and Second District Courts of Appeal of Florida have all confirmed that under Florida law conditions precedent can go to performance or contract formation. *See Foch*, 221 So. 3d at 704; *Genesis Concepts*, 169 So. 3d at 247; *Lowe*, 235 So. 3d at 1026.

[4] In the facts section of his initial brief, Mr. Cheruvoth states that Mr. Kamel did not return the required deposit by August 4, 2017. But Mr. Cheruvoth does not rely on the failure to make a timely deposit in his argument section.

Assuming, without deciding, that this condition precedent relates to contract formation, we conclude that the tardy signature is not an impediment to the formation of the first Agreement. Under Florida law, "a party's adherence to contractual conditions precedent is evaluated for substantial compliance or substantial performance." *Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 13 (Fla. 2d DCA 2015); *Racing Properties, L.P. v. Baldwin*, 885 So. 2d 881, 883 (Fla. 3d DCA 2004); *Alvarez v. Rendon*, 953 So. 2d 702, 708 (Fla. 5th DCA 2007). By signing only 5 days after the first Agreement's deadline, Mr. Kamel substantially complied with the condition precedent.

The second condition precedent on which Mr. Cheruvoth relies, § 20 from the first and second Agreements, provides:

> **Section 20, Signing Original Copies:** This Agreement shall have no force or effect unless a fully executed original copy of this Agreement is received by SeaDream Executive Offices at the address shown herein together with the original letter of credit by the

---

Accordingly, Mr. Cheruvoth likely abandoned that claim. *See Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 678, 681 (11th Cir. 2014). ("Abandonment of a claim or issue can . . . occur when the passing references to it are made in the 'statement of the case' or 'summary of the argument.'"). Even if Mr. Cheruvoth did not abandon the argument, Mr. Kamel made the required charter payments. Indeed, that is the foundation of Mr. Cheruvoth's theory that SeaDream acquiesced to an alleged quasi-contract. *See* Appellant's Rep. at 7. Hence, there was also substantial compliance as to the deposit.

date set forth. A facsimile or photocopy of this document shall be deemed as valid as the original.

See D.E. 13-10 at 7; D.E. 13-1 at 24. Mr. Cheruvoth argues that the Agreements were not formed because neither the executed original of the Agreements nor any credit were sent to the SeaDream defendants. See Appellant's Br. at 20–22. But the parties do not dispute that a copy of the executed Agreement was returned to the SeaDream defendants, and, as § 20 makes clear, a copy is sufficient. As to the letters of credit, Schedule II of both Agreements establishes that "[n]o Standby Irrevocable Letter of Credit will be required with this agreement." D.E. 13-1 at 13; D.E. 13-3 at 27. Schedule II forms part of the Agreements. See D.E. 13-10 at 7; D.E. 13-1 at 24. Reading the Agreements as a whole, it is clear that for these particular charters the parties agreed not to require the delivery of letters of credit. See Goldberg v. Bear Stearns & Co., 912 F.2d 1418, 1421 (11th Cir. 1990) ("When general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control."). Therefore, the failure to send executed originals of the Agreements and letters of credit did not impede the formation of the Agreements.

And because Mr. Cheruvoth challenges only the Agreements as a whole, instead of the specific arbitration clause contained in them, our inquiry is complete. See Solymar, 672 F.3d at 998 (affirming order compelling arbitration where the parties did "not challenge the formation of the arbitration clause within the [ ] Agreement,

but rather the entirety of the Agreement" because "*Prima Paint* was intended to prevent district courts from considering such broad challenges to general contracts containing arbitration clauses"). *See also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Having determined that the Convention's jurisdictional prerequisites are met and, specifically, that there existed written agreements between the parties, we find that the district court correctly granted the SeaDream defendants' motion to compel arbitration.

## IV

We affirm the district court's order compelling arbitration and dismissing the case.

**Affirmed.**