DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN L. SOBEL** and
**RICHARD G. SOBEL,**
Appellants,

v.

**CAROL LEE HELLINGER SOBEL,** as Trustee
of the Testamentary Trust f/b/o Carol Lee
Hellinger Sobel e/u the Last Will and Testament
of Frank Sobel dtd 6/11/13, **NANCY E. SOBEL,**
**CHRISTOPHER M. SOBEL, KEVIN S. SOBEL,** and
**UBS FINANCIAL SERVICES, INC.,**
Appellees.

No. 4D2023-0896

[April 17, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 502021CP004053.

Ann Burke Spalding of Law Office of Ann Burke Spalding, P.A., Fort Lauderdale, for appellants.

Peter A. Sachs, Melanie R. Skenian, and Alexander L. Brams of Jones Foster, P.A., West Palm Beach, for appellee Carol Lee Hellinger Sobel.

GROSS, J.

This case pits family members against each other in a disagreement over how an inherited IRA should be divided between them.

The appellee trustee's complaint for declaratory relief sought to establish the validity of a 2013 beneficiary designation (the "2013 designation"). The circuit court granted summary judgment upholding the validity of the 2013 designation. We reverse, as the 2013 designation never took effect due to a failure to comply with the terms of the IRA agreement.

The material facts of the case are not in dispute.

Frank Sobel transferred his IRA Account to UBS Financial Services in 2004. To open the account, Sobel signed UBS's IRA Application and Adoption Agreement, in which he agreed to be bound by the terms of a Custodial Agreement. Paragraph H of the Custodial Agreement, which governs beneficiary designations on IRA accounts, provides:

> The last form accepted by UBS Financial Services Inc. before your death will be controlling, whether or not it disposes of all the assets in your IRA, and will supersede all such forms previously filed by you.

In 2013, Sobel had at least constructive knowledge that UBS had to receive and accept an IRA beneficiary change form because he made such a change in 2008. At that time, Sobel did not use a UBS form but created his own five-page form to accomplish his desired IRA distributions. A UBS representative spoke with Sobel and his attorney because of the unique form; ultimately the UBS retirement services department approved, stamped, and accepted the five-page 2008 beneficiary designation (the "2008 designation").

In 2013, Sobel worked with his attorney to prepare a new IRA beneficiary designation update form. Sobel spoke with his UBS representative about making a change. Sobel signed the 2013 designation in his attorney's office on June 11, 2013.

Sobel left the executed 2013 designation with his attorney to submit to UBS. The attorney mailed the 2013 designation to UBS by United States Postal Service, first-class mail. The attorney's mailing did not provide for a return receipt or other proof that UBS received the mailing.

Sobel died on January 11, 2021. There is no record evidence that, between 2013 and 2021, either Sobel or his attorney checked with UBS to see if it had received and approved the 2013 designation.

After Sobel's death, UBS searched its records and found no record of the 2013 designation. At the time of Sobel's death, the most recent beneficiary designation form accepted by UBS was the 2008 designation.

On cross motions for summary judgment between the trustee on one side and appellants on the other side, the circuit court ruled that the 2013 designation controlled the distribution of the IRA.

*Discussion*[1]

The language of Paragraph H of the UBS Custodial Agreement controls the prerequisites for changing a beneficiary to the IRA. As the Second District wrote in *Luszcz v. Lavoie*, 787 So. 2d 245 (Fla. 2d DCA 2001):

> [a]n IRA is a contract with an institution that involves a third-party beneficiary designation. . . . [T]he owner of the IRA is free to name whomever desired as the beneficiary. . . . Upon the IRA owner's death, the institution need look no further than the IRA contract to determine the beneficiary.

*Id.* at 248. Moreover, the Florida Supreme Court has treated IRAs similarly to life insurance policies and other policies and plans that provide for the designation of beneficiaries. *See Crawford v. Barker*, 64 So. 3d 1246, 1252 (Fla. 2011).[2] Such policies and account contracts are governed by the well-settled rule that a beneficiary "may be changed only by strict compliance with the conditions set forth in the policy" or contract. *Brown v. Di Petta*, 448 So. 2d 561, 562 (Fla. 3d DCA 1984); *see also Warren v. Prudential Ins. Co. of Am.*, 189 So. 412 (Fla. 1939).

In this case, the relevant agreement provides that the "last form accepted" by UBS shall control post-death distributions of the IRA proceeds. To be accepted by UBS, the 2013 designation must have been received by UBS. Here, there is no record evidence of either acceptance or receipt by UBS. Considerations of strict compliance do not come into play, as the plain language of Paragraph H of the Custodial Agreement requires that UBS "accept" a beneficiary designation to make it effective.

---

[1] Without further discussion, we conclude that appellants had standing to challenge the distribution of the IRA proceeds. *See Siegel v. Novak*, 920 So. 2d 89, 95–96 (Fla. 4th DCA 2006).

[2] In *Crawford*, the Florida Supreme Court wrote:

> [A]n IRA, an annuity account, and an employee pension plan are analogous to a life insurance policy in that the owner of the policy or plan has to take specific steps to designate a beneficiary and death benefits pass directly to a beneficiary rather than going through probate. . . . We conclude that this reasoning extends to the deferred compensation fund at issue in this case.

64 So. 3d at 1253.

3

We reject the trustee's argument that the substantial compliance doctrine overrides the failure to demonstrate either UBS's receipt or acceptance of the 2013 designation. In *Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7 (Fla. 2d DCA 2015), the Second District described the parameters of substantial compliance:

> Substantial compliance or performance is "that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny" the other party the benefit of the bargain. It is, in essence, the opposite of a material breach of contract that would excuse the nonbreaching party from its obligations. Indeed, Florida courts have sometimes evaluated compliance with conditions precedent by asking whether the alleged variation from the condition was material.

*Id.* at 14 (internal citations omitted). We have observed that "[t]he doctrine of substantial performance is generally unavailable where a party has materially breached the terms of the agreement." *Legacy Place Apartment Homes, LLC v. PGA Gateway, Ltd.*, 65 So. 3d 644, 644 (Fla. 4th DCA 2011). And Williston explains that substantial performance excuses a technical breach because "actual performance is so similar to the required performance that any breach that may have been committed is immaterial." 15 Richard A. Lord, *Williston on Contracts*, § 44.52 (4th ed. 2000) (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379, 388 (D.S.C. 1993)).

In this case, UBS's acceptance of a new beneficiary designation was a material term of the Custodial Agreement. The law of substantial compliance cannot override a failure to comply with such a material term. To depart from settled law and allow the substantial compliance doctrine to override a material term of a contract would inject uncertainty into contracts involving named beneficiaries and thereby foment litigation.

The trustee relies heavily on the outlier case of *Smith v. Wilson*, 440 So. 2d 442 (Fla. 1st DCA 1983), but that case is distinguishable in two respects.

*Smith* involved a life insurance policy taken out by a city employee whom the court described as "a man with a sixth grade education." *Id.* at 444. The employee designated a beneficiary and the form was kept by the city. *Id.* at 443. Later, the employee no longer lived with the original beneficiary, and he filled out an updated employee information form designating a second beneficiary, but did not specifically enter a new

4

beneficiary form for the life insurance policy. *Id.* When the employee died, a dispute arose as to the proper beneficiary. *Id.*

The First District held that the later designation of beneficiary controlled, pointing to two factors not present in this case.

First, the court said that the city, "acting as agent" for the insurer, was at fault for mishandling the beneficiary information. *Id.* at 444. If the city was the agent for the insurer, then the insurer "received" the employee information form changing the life insurance beneficiary. Here, Sobel left the beneficiary form with his attorney, who was his own agent, not UBS's agent. It cannot be said that UBS ever received the form.

Second, the First District observed that the unsophisticated employee "actually thought he had done everything necessary" to make sure that the second beneficiary was designated under the policy, but the city was at fault for not filing the form in the proper place. *Id.* This allocation of fault to the city was tantamount to finding that the city had breached a fiduciary relationship with its employee. Here, there is no evidence that Sobel was similarly unsophisticated; in the attempt to make the beneficiary change, he was assisted by his attorney and a friend who also was an attorney. Moreover, as a result of the 2008 designation, Sobel had at least constructive knowledge that UBS had to accept a beneficiary change to make it effective.

We therefore reverse the final judgment and remand to the circuit court to enter final judgment in favor of appellants.

*Reversed and remanded.*

CONNER and KUNTZ, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

5