462 So.2d 1151 (1984)
BELEN SCHOOL, INC., D/B/a Belen Jesuit Intercultural Center, Appellant/Cross Appellee,
v.
Joseph J. HIGGINS, Appellee/Cross Appellant.
No. 83-1879.
District Court of Appeal of Florida, Fourth District.
October 10, 1984.
Rehearing Denied February 13, 1985.
*1152 R. Lawrence Bonner of Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A., Miami, for appellant/cross appellee.
Bernard Berman of Bernard Berman, P.A., Fort Lauderdale, for appellee/cross appellant.
PER CURIAM.
We reverse and remand with direction to enter judgment in favor of appellant/cross appellee, rendering the cross appeal moot.
HERSEY, GLICKSTEIN and BARKETT, JJ., concur.

ON MOTION FOR REHEARING OR CLARIFICATION
GLICKSTEIN, Judge.
We deny the motion for rehearing on the basis that nothing new was brought to this court's attention. We grant the request to explain our decision through opinion, however, in order that we may edify bench and bar.
In this case, appellant Belen School, Inc., (Belen) wanted to build a new school facility, for which purpose it required approximately $3,000,000. To this end, Belen had approached and dealt with several lending institutions. Dade Federal Savings & Loan Association had indicated a willingness to lend a portion of the funds, $1,000,000, if others could contribute the rest. At that time, Atlantic Federal Savings & Loan had offered $750,000, Flagler Federal Savings and Loan had offered $250,000, and First Federal Savings and Loan of Broward (later Glendale Federal) had acknowledged receipt of the loan package and promised to respond quickly. Belen, however, had not yet been able to obtain a mortgage contract nor final mortgage commitment at that point.
Belen then signed a contract with appellee Joseph Higgins, a mortgage broker, on February 27, 1979, under which it agreed to pay him 5% of the amount secured if he was able to perform under the contract. Appellee did some work toward obtaining mortgage commitments from various groups, and on March 26 did produce a *1153 letter from him giving four lenders who had "expressed a strong interest" in the financing. The four were the exact institutions previously mentioned and with which Belen had already been negotiating.
Mortgages were formally contracted for with this same group of four lenders, in the precise amounts already listed, with the addition of $500,000, supplied by Glendale Federal, on November 19, 1979. Higgins then sought his 5% commission, which Belen refused to pay. He then sued under the contract for the commission, and received a jury award of $125,000 (5% of $2,500,000). Belen had unsuccessfully sought a directed verdict, a judgment notwithstanding the verdict, and a new trial. It appealed the final judgment and denial of these motions.
We were faced with the question of whether the trial court erred in entering a judgment in accordance with the jury's verdict and in denying the motions for directed verdict, judgment notwithstanding the verdict, and new trial. We held that it did as a matter of law and ordered entry of a verdict for Belen.
This case had to be decided from an evaluation of whether appellee performed under the contract, there having been neither pleadings nor evidence addressed to quantum meruit or other basis for payment. Whether appellee performed depended on what constituted performance under the contract, and this dispute revolved around two parts of the contract, which are the preliminary clause:
We are herewith contracting for your services to assist us in obtaining a permanent mortgage in the amount of $3,000,000.00 for a period of twenty-five (25) years with interest terms not to exceed 10.25% for the above captioned property. In consideration of your services to obtain said mortgage, we agree to pay you the sum of 5 (five)% of the full amount of the mortgage desired, said sum due and payable to you as follows:
and clause 6:
(6) We agree that this letter contract will remain in full force and effect for a period of thirty (30) days from the date of acceptance, with any extensions beyond said date to be mutually agreed upon, and in the event any mortgage loan or commitment shall be obtained on the said property on or before said date, whether obtained by the undersigned or anyone, Joseph J. Higgins shall be entitled to a commission amounting to the percentage of the commitment above set forth. Further, we shall still remain obligated to you in accordance with the above contract, in the event we should consummate any transaction within three years after the termination date of this agreement with any lending institution introduced to us by you during said agreed upon period or extensions thereof.
Emphasizing the first paragraph, appellee said that the testimony that he rendered assistance in getting the institutions moving and committed justified the jury's award. Appellant, on the other hand, maintained that all of the terms of the contract were to be considered and read as consistent with one another, and claimed that paragraph (6) more fully explained what assistance was contemplated.
In interpreting a contract, the meaning of which is in doubt, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203(a) (1979). With this principle in mind, a look at the two provisions indicates that only appellant's construction gave a reasonable and effective meaning to all of the contract's terms. Were one to accept appellee's view, so long as he rendered assistance in getting mortgage commitments which are consummated within three years of the contract, then he was entitled to a commission. If this was what the parties intended, then why the thirty day provision for a signed commitment, no matter by whom obtained? Additionally, why have *1154 language referring to an "institution introduced to us by you"? This construction makes no sense whatsoever, making most of paragraph six unnecessary or conflicting.
Obviously, paragraph 6 was intended to explain more fully what appellee was required to do under the contract. Belen was contracting for Higgins' assistance in getting a signed commitment within 30 days because they needed the money and progress had been slow. The language "whether obtained by the undersigned or anyone" no doubt reflected both parties' knowledge that substantial progress had been made with at least three institutions. This is consistent with the testimony that Higgins knew that Dade had indicated its willingness to lend the money and that it had been provided for in the contract. Failing its receipt of a signed commitment within 30 days, Belen was also willing to pay Higgins if he introduced them to a new lender who committed to a mortgage within three years. This interpretation of contractual performance was the only one that gave full and reasonable effect to all of the contract's terms.
Additionally, this contract was Higgins' standard form contract, with language drafted for his benefit, the only addition being insertion of the word "reasonable" in two places. It is a fundamental concept in contract law that a contract is interpreted against the person for whose benefit it was drafted, where its meaning is in doubt. This interpretative precept also militates against acceptance of appellee's construction.
According to the contract, then, Higgins could have earned his fee from Belen by either speed or use of contacts to bring in new lenders. Neither party asserted that the speed requirement was met, there having been no signed commitment within the thirty days. The only remaining way for Higgins to have performed was for him to have introduced new parties who provided financing within three years of the contract. Clearly, all of the four were already in contact with appellant, and none was a new participant introduced through appellee's efforts. There was absolutely no evidence that would support a contrary conclusion.
The jury's award was fairly obviously based on the fact that appellee did render valuable assistance to Belen. They justifiably concluded that he played a major role in Belen's finally getting a firm commitment, there being testimony that the deal was "lying fallow" before he began his efforts. The problem with an award under these circumstances was that this was not performance under the contract, but really amounted to an award under quantum meruit. The pleadings, however, did not allege any basis for award other than contractual, so the jury was unjustified in finding for appellee.
HERSEY and BARKETT, JJ., concur.