548 So.2d 781 (1989)
RAYTHEON SUBSIDIARY SUPPORT COMPANY, INC., a Subsidiary of Raytheon Company, Appellant,
v.
J.O. CROUCH, Appellee.
No. 87-2205.
District Court of Appeal of Florida, Fourth District.
September 6, 1989.
Rehearing Denied September 26, 1989.
Lee B. Gartner of Lee B. Gartner, P.A., Fort Lauderdale, for appellant.
*782 Robert L. Bogen of Braverman & Bogen, Boynton Beach, for appellee.
ROBINSON, STEVEN D., Associate Judge.
Raytheon Subsidiary Support Company, Inc. (Raytheon), a subsidiary of Raytheon Company, appeals a decision of the trial judge sitting without a jury that an employment contract with J.O. Crouch (Crouch) had a specific duration and was not terminable at will. We affirm.
Crouch agreed to be employed by Raytheon for a twenty-four-month assignment to Saudi Arabia. He accepted employment by signing and returning an employment letter which incorporated by reference a Memorandum of Understanding containing the terms of his assignment. Near the end of his initial assignment, Raytheon offered to extend his assignment for twelve months. Crouch agreed by signing and returning an extension of assignment memorandum. The extension agreement incorporated the following clause: "Length of Assignment: Your assignment has been extended for twelve months commencing on August 20, 1977."
About two months into the extension, Raytheon asked Crouch to report back to the United States to be reassigned for the remainder of his tour. After returning, Crouch was never reassigned and never paid any further salary. Subsequently, Raytheon informed Crouch by a letter dated February 22, 1978, that his employment had already been terminated as of November 24, 1977. Raytheon did not contend that Crouch breached his employment contract.
Raytheon initiated this suit to recover $1,333.34 in excess shipping charges incurred in returning Crouch to Fort Lauderdale. Crouch brought a counterclaim alleging breach of his employment contract. The trial judge awarded Raytheon the excess shipping charges and Crouch $21,655.66 plus interest for Raytheon's breach of the employment contract.
The general rule of law in Florida is that an employment contract without a definite term is terminable at will, and no cause of action may be maintained for its termination. DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253 (Fla. 1980); Roy Jorgensen Associates, Inc. v. Deschenes, 409 So.2d 1188 (Fla. 4th DCA 1982); Crawford v. David Shapiro & Co., 490 So.2d 993 (Fla. 3d DCA 1986). Additionally, mere expectations are insufficient to create a binding term of employment. Maguire v. American Family Life Assurance Co. of Columbus, Georgia, 442 So.2d 321 (Fla. 3d DCA 1983).
Raytheon relies primarily on the case of Roy Jorgensen in which this court held a letter providing that "on or about October 31 you will be assigned to our Ecuador Highway Maintenance Technical Assistance Project in the capacity of Highway Maintenance Equipment Engineer for a period of 28 months" was merely language of expectation, and not evidence of a definite period of employment. We concluded in that case:
[T]he reference to Mr. Deschenes being a "permanent employee" and the reference to the amount of annual leave to which he would become entitled after five years' service are totally inconsistent with a construction of the employment agreement being for a definite term of 28 months; rather, such provisions are entirely consistent with the construction which we place upon the contract, that is, it was a contract for permanent employment with no definite duration specified, the 28 month assignment to Ecuador being merely one of expectation of the initial assignment.
409 So.2d at 1190.
The employment contract in this case is subject to a different analysis for a number of reasons. The company's Memorandum of Understanding contains the following language: "Unless otherwise indicated by the Company prior to assignment the minimum duration of your assignment is 24 months. Any subsequent assignment extentions [sic] must be for a minimum of 12 months." Raytheon's Industrial Relations Policies and Procedures document provides as follows:

*783 5. DURATION OF ASSIGNMENT
5.1 Unless otherwise indicated by the Company prior to assignment, the minimum duration of Saudi Arabian assignments will be twenty-four months. The Company reserves the right to terminate employment prior to completion of two years in the best interests of the employee and/or the program.
5.2 Assignments may be extended for periods of not less than one year, subject to mutual written agreement between the employee and the Company. Once an extension has been agreed upon, the employee must serve it to completion unless sooner terminated at the discretion of the Company.
The written agreement extending his assignment reads:
In accordance with paragraph 18, ... the following terms and conditions will apply based upon mutual consent to extend your assignment for an additional twelve months.
1. Length of Assignment: Your assignment has been extended for twelve months commencing on August 20, 1977.
A specific minimum duration is continually referred to in the documents. We also note that the twelve-month extension begins on a date certain, August 20, 1977. Though part of the contract's wording seems to give Raytheon full discretion, a complete reading of the employment documents proves otherwise. Paragraph D6 of the Memorandum of Understanding states as follows:
The Company reserves the right to terminate your employment without prejudice while on foreign assignment in the best interests of you and/or the program. In the event that this should become necessary, you will be returned to CONUS. Should it become necessary to terminate you due to lack of professional and/or moral conduct expected by the Company, thus giving the Company due cause to terminate your employment, you will be returned at the Company's expense to Andover, Mass., considered your point of hire. The day you arrive at your point of hire, your employment with the Company will be terminated and all further Company liability will cease effective that date. Should your conduct be so gross as to seriously impair the Company's professional image and/or grievously offend an Official of the Saudi Arabian government the Resident Operations Manager may at his discretion immediately terminate your employment with the Company and all further administrative or financial liability will cease effective the date of discharge. (emphasis added)
These particularized rights and remedies, which cover various contingencies, are only consistent with a contract for a definite term. If Raytheon had the right under the contract to terminate an employee without due cause and with no repercussion to itself, there would be no necessity for Raytheon to expressly protect itself under circumstances in which an employee is terminated with due cause.
Raytheon argues that the phrase "without prejudice" refers to prejudice for the company and describes the company's right to terminate at will. Crouch argues that this phrase means that, where there is no cause to discharge, the employee will merely be returned to work in the United States. "A fundamental and frequently applied general rule of construction is that where the language of a contract is ambiguous or doubtful, it should be construed against the party who drew the contract and chose the wording." American Agronomics Corp. v. Ross, 309 So.2d 582, 584 (Fla. 3d DCA 1975). In interpreting a contract where its meaning is in doubt, an interpretation which gives a reasonable, lawful, and effective meaning to all its terms is preferred to an interpretation which leaves a part of the contract unreasonable, unlawful or of no effect. Belen School, Inc. v. Higgins, 462 So.2d 1151 (Fla. 4th DCA 1984).
In finding an employment contract valid for a specified duration, the case of Maines v. Davis, 491 So.2d 1233 (Fla. 1st DCA 1986), applied six rules of contract construction:
(1) the contract should not be held void for uncertainty unless indefiniteness reaches a point where construction becomes *784 futile; (2) ambiguities are to be construed against the drafter; (3) the conduct of the parties through their course of dealings shall be considered to determine the meaning of the written agreement where the terms are in doubt; (4) the objects to be accomplished shall be considered, and to this end the court shall place itself in the position of the parties when the contract was entered into; (5) the interpretation of the contract should be consistent with reason, probability, and practical aspects of the transaction; and (6) the contract should be considered as a whole, not in its isolated parts.
Id. at 1235 (citations omitted). Applying the Maines rules of construction to the facts of this case clearly indicates an employment contract for a definite duration. The trial court was correct in finding that the extension of the contract was for a specified duration.
Affirmed.
GLICKSTEIN and GUNTHER, JJ., concur.