OWEN, WILLIAM C., Jr., Senior Judge.
Appellant and appellee, the two entities which between them own or control the entire 40 acre tract of land commonly known as the Twin City Mall,[1] disputed the interpretation (and appellant’s alleged violations) of two written parking agreements entered into years ago by their respective predecessors in title. The trial court entered a comprehensive judgment, finding the agreements valid and enforceable and determining the respective rights and obligations of the parties. On the sole issue presented on this appeal, we hold that the trial court erred in finding that appellant’s customers and invitees could not park in or traverse a portion of appel-lee’s property devoted to parking.
In 1961, Northlake Shopping Center, Inc. (“Northlake”), the owner of the entire 40 acre tract, conveyed to appellant’s predecessor a 4.3 acre parcel (referred to as the “Exception Parcel”) located in the southeast corner. In conjunction with that conveyance, Northlake and its vendee signed a document called the Mutual Parking Easement,[2] one of the documents in issue here, which provided in part:
3. It is the intention of the parties to grant to each other a non-exclusive mutual parking easement so that each party, its customers and invitees, will have the right to use, free of charge and at all times, the other’s parking area.
4. The following agreements ... are covenants running with the land [and] are made by each party ... for the benefit of each other party, and the grantees, successors, assigns, lessees, agents, employees, customers and invitees of each party....
*564 (a) All parking area on the respective premises shall be used and enjoyed in common.
(Emphasis supplied).
In 1968, Northlake divided its remaining 35.67 acres into two parcels, Parcel A (the northern 19 acres which it conveyed to Sears Roebuck & Co.) and Parcel B, (the 16.67 acres retained by Northlake for development). Northlake and Sears signed a document called License Agreement, the other document in issue here. The relevant part of the License Agreement, which the parties made binding on, and inuring to the benefit of, the parties’ respective successors and assigns, provided that certain provisions, including the following, would be covenants running with the land:
9. Northlake and Sears agree that:
(a) On Parcel A and on Parcel B there shall be provided and maintained 5.5 parking spaces per One Thousand (1,000) square feet of gross leasable area of all buildings on each said parcel....
(b) All parking areas on Parcels A and B shall be used and enjoyed in common as free parking areas.
(Emphasis supplied).
13. (a) Northlake hereby grants Sears a non-exclusive license for the parking of Sears’ customers’ cars and for access, ingress and egress for pedestrians and for vehicles of Sears and Sears’ customers, employees and business visitors, in common with other tenants of said shopping center, their visitors and customers, over those portions of Parcel B devoted to customer parking.
(Emphasis supplied).
(b) Sears hereby grants Northlake and Northlake’s tenants in said shopping center, a non-exclusive license for the parking of customers’ cars and for access, ingress and egress for pedestrians and for vehicles of customers and tenants in the shopping center, over that portion of Parcel A devoted to customer parking.
After the execution of the License Agreement, Northlake conveyed to appellant’s predecessor, from Parcel B, two additional parcels: a 2.7 acre parcel which bordered the Exception Parcel on the north and partially on the west, (the “Builders Square Parcel”),[3] and a 1.24 acre parcel (Parcel 3) bordering the Exception Parcel on the west. Appellant now owns or controls the Exception Parcel (on which there are several store or retail buildings), the Builders Square Parcel, and Parcel 3. These three parcels fit together jigsaw fashion to form a rectangular tract of eight and a fraction acres in the southeast corner, bordered on the east by U.S. 1 and on the south by Palmetto Park Road. Appel-lee now owns or controls the remainder of the property within the shopping center, i.e., all of Parcel A and all of Parcel B (except Builders Square and Parcel 3). To complete the picture, appellee’s Parcel B property wraps around appellant’s property on the north and west sides, thereby isolating appellant’s Parcel B property from appellee’s Parcel A property (roughly the northern half of the shopping center).
In the final judgment, the court ruled in substance that (1) both the Mutual Parking Easement and the License Agreement were valid and enforceable; (2) under the Mutual Parking Easement, appellant, as owner of the Exception Parcel, has a right to have its customers relative to that parcel park within any parking area located on the rest of the property and similarly, appellee has the right to have its customers park on appellant’s Exception Parcel; (3) under the License Agreement, appellant, as owner of Parcel 3 and the Builders Square Parcel, both of which are located within Parcel B, has the right to have its customers using that property park within Parcel A, and similarly, appellee, as owner of Parcel A, has the corresponding right to *565 have its customers relative to that parcel park within the parking areas on Parcel B, including those owned by appellant; and (4) since the License Agreement does not address the rights of customers of one Parcel B owner to park in the parking area of another Parcel B owner, it does not give to appellant’s customers and invitees using appellant’s Parcel B property (Parcel S and that part of the Builders Square Parcel within Parcel B), a license to park on or traverse any of appellee’s Parcel B property.
It is the latter underscored ruling with which appellant takes issue here. Appellant contends that the court failed to give any meaning to the provision, found in each of the documents, which provides, in substance, that all parking areas of the respective parcels shall be used and enjoyed in common, or to the separate provision in paragraph 13(a) of the License Agreement recognizing that the license granted is “in common with other tenants of said shopping center, their visitors and customers, over those portions of Parcel B devoted to customer parking. ” We agree.
In determining the rights of the parties to a written agreement, a court should consider the document as a whole and, where possible, give meaning and effect to every provision. See Lambert v. Berkley South Condominium Ass’n, 680 So.2d 588 (Fla. 4th DCA 1996); U.S.B. Acquisition Co. v. Stamm, 660 So.2d 1075 (Fla. 4th DCA 1995). It appears not only that the court gave no meaning to these unambiguous provisions, but also that it came to a construction that is contrary to their plain and ordinary meaning, i.e., that all tenants in the shopping center, and their respective customers and invitees, enjoy the right in common with one another to park on and traverse all areas devoted to customer parking. It was error not to accord this unambiguous language its clear meaning. See Belen School, Inc. v. Higgins, 462 So.2d 1151 (Fla. 4th DCA 1984); Hardwick Properties, Inc. v. Newbem, 711 So.2d 35 (Fla. 1st DCA 1998); Akers v. Canas, 601 So.2d 305, 306 (Fla. 3d DCA 1992).
Because the construction of a contract is a matter of law, an appellate court is free to reassess the contract and arrive at a conclusion different from the trial court. See Broward County v. LaPointe, 685 So.2d 889, 892 (Fla. 4th DCA 1996); Meadows Country Club, Inc., v. Unnever, 702 So.2d 586 (Fla. 2d DCA 1997). We hold that both the Mutual Parking Easement and the License Agreement give to appellant, its customers, employees and business visitors, in common with other tenants of said shopping center, their visitors and customers, the right to park in and traverse those portions of Parcel B devoted to customer parking.[4] Except to the extent of conflict with our holding, the judgment is left undisturbed. Upon remand the court shall enter an amended judgment consistent herewith.
REVERSED AND REMANDED.
DELL and STEVENSON, JJ., concur.

. As a historical note, but of no significance to the issue in this case, the property lies partly within the Town of Lake Park and partly within the Village of North Palm Beach.

. In that agreement the parcel conveyed was designated as “Schedule A" and the balance of Northlake’s property as "Schedule B”; however, to avoid confusion, the Schedule A property is referred to as the "Exception Parcel” since the Schedule B property was subsequently divided into Parcel A and Parcel B.

. The now vacant building most recently occupied by a Builders Square retail store was constructed primarily on this parcel (although a part of the building is on the Exception Parcel).

. Our decision relates only to the use of the parking area. The issue of who is responsible for providing the parking area is not before us.