# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2282

_____

EARL HOLMES,

Appellant,

v.

FLORIDA A&M UNIVERSITY, by
and through the Board of
Trustees for Florida A&M
University,

Appellee.

_____

No. 1D17-4069

_____

CLEMON J. JOHNSON,

Appellant,

v.

FLORIDA A&M UNIVERSITY, by
and through the Board of
Trustees for Florida A&M
University,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
James O. Shelfer, Judge.

November 27, 2018

BILBREY, J.

In these consolidated appeals, Appellants challenge final summary judgments in favor of Appellee Florida Agricultural and Mechanical University (FAMU) in Appellants' respective suits for breach of contract and other causes of action after Appellants' employment agreements were terminated without cause prior to the expiration dates specified in the agreements. We find, based on the expressed terms of the agreements and reading the agreements and incorporated regulations as a whole, that ambiguities exist such that FAMU was not entitled to judgment as a matter of law. Accordingly, the summary judgments are reversed, and the cases are remanded for further proceedings.

## Background

Appellant Earl Holmes is the former head football coach and Appellant Clemon J. Johnson is the former head basketball coach at FAMU. Both coaches had previously been employed by FAMU as assistant coaches before entering into the agreements at issue. Coach Holmes' previous employment agreements as an assistant coach were clearly terminable at will.

When Coach Holmes was promoted to head football coach and Coach Johnson returned to FAMU as head basketball coach, FAMU entered into separate, very similar written employment agreements with both coaches. The employment agreements set out specific start and end dates for their "appointments," the language used in the agreements to specify the term of each agreement. Coach Holmes testified in his deposition and claimed in answer to interrogatories that he was told by the then FAMU athletic director that the contract was a guaranteed four year term. Coach Holmes' employment agreement provided in part:

2

**2.0  TERM**

2.1    This appointment shall commence on January 11, 2013 and end on January 10, 2017, without further notice to Coach, and is subject to the rules, regulations, polices and procedures of the Florida Board of Governors and the University as now or hereafter promulgated and the conditions stated herein.

2.2    This Agreement is renewable solely upon an offer from University and acceptance by Coach, both of which must be in writing and signed by the parties. This employment in no way grants Coach a claim to tenure in employment, or any years of employment attributable to tenure within the University.

Coach Johnson claimed that emails and the deposition of the then FAMU president supported his contention that his employment agreement also contained a definite four year term. Section 2 of former Coach Johnson's employment agreement provided nearly identical language as Coach Holmes' agreement, with a start date of May 23, 2011, and an end date of April 30, 2015. Because both of the agreements were for multiple years, approval was sought and received from FAMU's Board of Trustees before the agreements were finalized.

In addition to the terms of the appointments being subject to FAMU's regulations as referenced in section 2, section 5 of both contracts addressed "Non-reappointment, Separation, Termination, and Other Discipline." Coach Holmes' agreement provided in section 5:

**5.0  NON-REAPPOINTMENT, SEPARATION, TERMINATION, OTHER DISCIPLINE**

5.1    Non-reappointment, separation or termination of this Agreement by University may occur pursuant to the terms of this Agreement and University regulations as now existing or hereafter promulgated.

3

5.2    The University shall also have the right to terminate this at any time prior to its expiration, upon written notice to Coach, upon the following grounds:

[listing grounds for early termination for cause, (a) – (f)]

Coach Johnson's agreement provided nearly identical language in section 5 and listed seven grounds upon which the coach's appointment could be terminated for cause.

During their initial appointments, both coaches received letters from the then president of FAMU informing them that they were immediately placed on "administrative leave" and that their employment would end sixty days after the dates of their letters.[1]  Neither coach was terminated based on any of the for cause grounds as listed in section 5 of the employment agreements.  Both sixty-day administrative leave periods ended prior to the end dates set out in section 2.1 of the employment agreements.  The FAMU president's letters stated that the terminations were "[p]ursuant to paragraph 5.1 of your Employment Agreement and Florida A&M University Board of Trustees (FAMU) regulations 10.105 and 10.106."  The coaches' contractual salaries were paid until the ending dates stated in the letters.

Both coaches filed suit seeking damages for breach of contract and other causes of action.  Following the trial court's entry of summary judgments in favor of FAMU in their respective cases, the coaches appeal to this court.

## Analysis

Where no material facts are in dispute and the "determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law

_____

[1] The actual ending date for both coaches employment as stated in the letters was greater than 60 days after the FAMU president's letters.  This discrepancy has not been explained.

4

only and determinable by entry of summary judgment." *Cox v. CSX Intermodal, Inc.,* 732 So. 2d 1092 (Fla. 1st DCA 1999) (citations omitted). But the existence of an ambiguity in a contract precludes the entry of summary judgment. As this court has stated:

> Nevertheless, when the terms of the contract are ambiguous, susceptible to different interpretations, parol evidence is admissible to "explain, clarify or elucidate the ambiguous term." *Friedman v. Va. Metal Prods. Corp.,* 56 So. 2d 515, 517 (Fla.1952). The initial determination of whether the contract term is ambiguous is a question of law for the court, and, if the facts of the case are not in dispute, the court will also be able to resolve the ambiguity as a matter of law. *See Ellenwood v. Southern United Life Ins. Co.,* 373 So. 2d 392, 394 (Fla. 1st DCA 1979). However, "[w]here the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment." *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.,* 513 So. 2d 218, 219 (Fla. 1st DCA 1987).

*Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001).

"Whether a contract is ambiguous is a question of law." *Talbott v. First Bank Florida, FSB*, 59 So. 3d 243, 245 (Fla. 4th DCA 2011). "Accordingly, the issue before the Court is whether the trial court correctly determined that [Appellee] was entitled to prevail as a matter of law." *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 131 (Fla. 2000). Our standard of review of the summary judgments for FAMU, based on the legal effect of the contracts, is de novo. *University Hous. by Dayco Corp. v. Foch*, 221 So. 3d 701, 704 (Fla. 3d DCA 2017).

The trial court found, and we agree, that FAMU regulations 10.105 and 10.106 were sufficiently incorporated into the contracts as generally referenced throughout numerous sections

of both agreements.[2] *See BGT Group, Inc. v. Tradewinds Engine Servs., LLC*, 62 So. 3d 1192, 1194 (Fla. 4th DCA 2011) (discussing how a document can be incorporated into a contract); *see also Lowe v. Nissan of Brandon, Inc.*, 235 So. 3d 1021 (Fla. 2d DCA 2018). Accordingly, the provisions in the body of the contracts and the language in the incorporated regulations must be read as a whole. *See Jenkins v. Eckerd Corp.*, 913 So. 2d 43 (Fla. 1st DCA 2005). However, because the interaction of FAMU's regulations with the explicit terms of the agreements creates an ambiguity, we cannot agree with the trial court's conclusion that the legal effect of FAMU's regulations entitled FAMU to judgment as a matter of law.

FAMU regulation 10.105, titled **"Recruitment, Selection and Employment of University Faculty, Administrative and Professional, Executive Service, University Support Personnel System and Other Personal Services Employees,"** provides in pertinent part:

(3) **Appointments.**

\* \* \*

(e) No appointment shall create any right, interest, or expectancy of continued employment. At any time during any appointment, faculty, A&P, and Executive Service employees may be non-renewed upon written notice in compliance with these regulations and consistent with any collective bargaining agreement.

\* \* \*

(5) **Probationary Period for A&P and USPS employees.**

---

[2] The question of whether the FAMU regulations were incorporated consumed much of the argument on summary judgment below. The impact of the incorporation of the regulations was not extensively argued below but the parties agree that our *de novo* review means that the issue is preserved.

6

(a)  The initial appointment for of [sic] a new employee to an A&P or a USPS position shall be for a probationary period of six (6) months . . . During this probationary period, the appointment may be terminated at any time without any requirements of notice and without any rights of appeal or access to any complaint procedure as provided in these regulations.

While FAMU regulation 10.106 titled, "Non-reappointment and Separation of Administrative & Professional (A&P) Employees," provides in pertinent part:

(1)  The President or President's designee may choose not to renew the employment of Administrative and Professional (A&P) employees, including the Executive Service.  The notice of non-reappointment or intention not to reappoint an A&P employee shall be in writing.  On or before March 1st of each contract year, the President or the President's designee shall notify any employee who will be non-reappointed.

(a)  Administrative and Professional (A&P) employees appointed to positions of Head Athletic Coach . . . may be non-reappointed as provided in section 1 above, unless their employment contracts provide otherwise.

*    *    *

(3)  Notwithstanding the provisions of section 1 herein, an A&P employee may be separated from University employment.  An A&P employee shall not have tenure and no expectation of appointment beyond a sixty (60) days' notice.

FAMU relied on the final sentence in regulation 10.106(3) in particular for its purported authority to terminate the coaches' appointments early, without cause but upon sixty days' notice. FAMU contends that this expectation-limiting language modifies the stated end dates of these contracts, so long as FAMU provides

7

sixty days' notice. We disagree with FAMU that this language makes the agreements unambiguous.

The law is well-settled that an employment contract with a specified term of duration is not terminable at will, but can only be terminated prior to its end date if provided for in the contract. *See Story v. Culverhouse*, 727 So. 2d 1128, 1130 (Fla. 2d DCA 1999). "[W]hen a contract for employment provides a definite duration, the employment contract is enforceable." *Iniguez v. American Hotel Register Co.*, 820 So. 2d 953, 955 (Fla. 3d DCA 2002).

The law is also well-settled that courts are required "to read provisions of a contract harmoniously in order to give effect to all portions thereof." *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000); *see also Speegle Const. Co. v. District Bd. of Trs. of Nw. Fla. State Coll.*, 75 So. 3d 360, 361 (Fla. 1st DCA 2011); *Story*, 727 So. 2d at 1130. A contract "should be considered as a whole, not in its isolated parts." *Maines v. Davis*, 491 So. 2d 1233, 1235 (Fla. 1st DCA 1986). If clauses of a contract cast doubt upon the end date and circumstances allowing early termination, "an interpretation which gives a reasonable, lawful, and effective meaning to all its terms is preferred to an interpretation which leaves a part of the contract unreasonable, unlawful or of no effect." *Raytheon Subsidiary Support Co. v. Crouch*, 548 So. 2d 781, 783 (Fla. 4th DCA 1989). Finally, "ambiguities are to be construed against the drafter." *Id.* at 784 (quoting *Maines*, 548 So. 2d at 1235).

Reading the contract and incorporated regulations as a whole, giving meaning and effect to all provisions, and construing any ambiguities against FAMU as the drafter of both contracts and incorporated regulations, we find that FAMU was not entitled to judgment as a matter of law. The only use of the word "terminated" in FAMU regulations 10.105 and 10.106 is found in regulation 10.105(5) pertaining to probationary employees. Because neither coach was terminated during the first six months of his employment, this subsection is clearly inapplicable. FAMU's use of the terms "non-renewal," "non-reappointment," "separated from University employment," and "terminated" in separate portions of these regulations establishes that "non-

8

renewal," "non-reappointment," and "separated" may not be synonymous with "terminated." *See Paladyne Corp. v. Weindruch*, 867 So. 2d 630, 633 (Fla. 5th DCA 2004) (holding that separate non-renewal and termination provisions required reading to give effect to each; separate provisions had separate meanings and consequences).

"As a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended." *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006). We are uncertain whether the terms FAMU used in its regulations — "non-renewed" and "non-reappointed" — mean the absence of a renewal or reappointment upon the expiration of the stated end dates of the coaches' appointments. And considering the defined terms of the coaches' appointments in section 2, as modified by the for-cause provisions in section 5, we cannot say whether FAMU's use of the phrase "separated from University employment" in regulation 10.106(3) meant "terminated early without cause."

While regulation 10.105(3)(e) addresses A&P employees' lack of "expectation" of "continued employment" and regulation 10.106(3) provides "no expectation of appointment beyond a sixty (60) days' notice," these provisions regarding lack of expectation must be read in harmony with and to preserve the effect of the clearly stated end dates and for-cause provisions in these contracts. *See Johnson*, 760 So. 2d at 84 (holding that courts are required to read provisions of a contract harmoniously in order to give effect to all portions thereof); *Speegle Constr. Co.,* 75 So. 3d at 361 (same). Where there is no specified duration in an employment contract, "an employee's mere expectations, however reasonable, are insufficient to create a binding term of employment." *Tohma v. Spalding & Evenflo Cos.,* 724 So. 2d 693, 694 (Fla. 2d DCA 1999). On the other hand, where a duration of the appointment is specified and modified by various stated contingencies, the employer's right to terminate early without cause is limited. Based on the inconsistencies in the agreements parol evidence will be necessary to determine which reading prevails.

9

For example, in *Raytheon Subsidiary Support Company*, a minimum duration of assignments was specified, but the employer "reserved" the right to "terminate employment prior to completion." 548 So. 2d at 783. This wording in isolation appeared to give the employer unlimited discretion to terminate early. However, the memorandum incorporated into the employment contract there addressed various contingencies under which the company could terminate for cause. *Id.* Considering the contract and memorandum as a whole, the court in *Raytheon* found that the provision for early termination under various scenarios for cause would be rendered superfluous if the contract was terminable at will without cause based upon one phrase giving the employer discretion to terminate. *Id.* at 783-84. Reading the clauses of the contract in concert to give effect to each led the court in *Raytheon* to conclude that the contract was one "for a definite duration," terminable early only upon the conditions and procedures particularly set out in the termination clause in the incorporated memorandum. *Id.* at 784.

Reading the contracts and regulations here as a whole rather than in isolated parts, the lack of "expectation" set out in regulations 10.105(3)(e) and 10.106(3) may not override the specified durations of the coaches' contracts in the absence of cause for termination. *See Maines*, 491 So. 2d at 1235. To find the appointments terminable by FAMU at will, merely upon sixty days' notice, could impermissibly render the specified end dates and provisions for early termination for cause in the contracts "virtual dead letters," that is, unnecessary and of no effect. *See McArthur v. A.A. Green & Co. of Fla.*, 637 So. 2d 311, 312 (Fla. 3d DCA 1994). We are uncertain whether that was the parties intention in entering into the agreement. Since the contract language "is susceptible to more than one reasonable interpretation, extrinsic evidence may be considered by the court to ascertain the intent of the parties." *Talbott*, 59 So. 3d at 245.

The summary judgment as to the second count in both complaints for breach of implied covenant of good faith and fair dealing must also be reversed. "Florida contract law does recognize an implied covenant of good faith and fair dealing in every contract." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). In its motions for

10

summary judgment, FAMU relied on our case *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 170 (Fla. 1st DCA 2015), for the proposition that "a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." This contention apparently provided the trial court's only rationale in granting summary judgment as to these counts. Since we are reversing on the grant of summary judgment as to the breach of contract counts, it is necessary to also reverse the summary judgment as to the other counts in both complaints.

Finally, the grant of summary judgment on the counts for fraudulent inducement and negligent misrepresentation must also be reversed. The trial court found that because the termination provisions in the employment agreements were clear, the terms of the agreements superseded any oral statements FAMU employees may have made. *See Taylor Woodrow Holmes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536 (Fla. 5ht DCA 2003). Since we find that the agreements were ambiguous, we also reverse as to these counts. *See D & M Jupiter, Inc. v. Friedopfer*, 853 So. 2d 485, 487 (Fla. 4th DCA 2003) (holding that "[a]s a general rule, it is a matter for the jury to determine if an intentional misrepresentation has been made by" one party to another).

## Conclusion

Because of conflicts in the express terms of both coaches' contracts, including FAMU's regulations incorporated therein, the early terminations of these employment contracts without cause merely upon sixty days' notice may have violated the specific terms of the contracts. Because of this ambiguity FAMU was not entitled to judgment as a matter of law. Accordingly, the summary judgments for FAMU and against Holmes and Johnson are reversed as to all counts, and the causes are remanded for further proceedings.

REVERSED and REMANDED.

B.L. THOMAS, C.J., and OSTERHAUS, J., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Beverly A. Pohl and Christina Lehm of Nelson Mullins Broad and Cassel LLP, Fort Lauderdale; Michael K. Wilson and Natalie Peters Chappel of Nelson Mullins Broad and Cassel, Orlando, for Appellants.

Robert E. Larkin, III, of Allen, Norton & Blue, P.A., Tallahassee, for Appellee.