# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D21-806
_____

JOHN D. LEVITAN, SR.,

    Appellant,

    v.

LUCIAN G. DANCAESCU,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Jan Shackelford, Judge.

September 14, 2022

PER CURIAM.

In this appeal from a summary final judgment, Appellant asserts that the trial court erred in granting Appellee's motion for summary judgment while Appellant's motion for leave to amend his answer was pending. We decline to address this argument—which is not preserved for appeal—because Appellant never requested that the trial court rule on his motion before ruling on the summary judgment motion. Appellant further asserts that the trial court erred in concluding that Appellee was entitled to summary judgment based on the clear and unambiguous language of the parties' agreement. Finding merit as to this second argument, we reverse and remand for further proceedings.

## I.

The parties in this case entered into an agreement for Appellant to purchase LDRK Capital, LLC, ("LDRK") from Appellee for $2,000,000.00. The agreement provided that LDRK was the owner of two Brazilian treasury bonds or LTN bonds and that "[Appellant] acknowledge[d] that he independently reviewed the information posted on the website www.tesouro.fazenda.gov.br prior to this agreement and that no representations as to the Market Value were made by [Appellee] and [Appellant's] interest in these bonds [wa]s strictly speculative."

Appellee subsequently filed a one-count complaint against Appellant for breach of contract. Appellant filed a counterclaim for damages, alleging that the LTN bonds sold to him "were represented to be true, valid, marketable, and in force," but were instead "fraudulent and counterfeit, without value whatsoever," and that Appellant relied upon these representations to his detriment.

Appellee moved for summary final judgment, claiming that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law on the complaint and counterclaim. Specifically, Appellee asserted that the language of the parties' agreement refuted the alleged representations made by Appellee regarding the LTN bonds. In support of the motion, Appellee filed his sworn affidavit, which stated in pertinent part that (1) he made no representations to Appellant as to the market value of LDRK or assets owned by LDRK; (2) Appellant's interest was strictly speculative; and (3) he sold LDRK to Appellant based on representations Appellant made to him that he understood that he was purchasing a speculative interest.

In opposition to Appellee's motion for summary judgment, Appellant filed three affidavits. The first affidavit was executed by James Tanenbaum, a New York attorney, who stated that in response to Appellant's concerns about the genuineness of the bonds, he contacted the Brazilian firm of Pinherio Guimaraes about the validity of the bonds and received a letter from the firm, whose ultimate conclusion was that "the LTN was probably counterfeit" and that even if "the LTN was authentic, the LTN was

2

not redeemable due to the passage of the statute of limitations on the right to enforce the LTN." The second affidavit was executed by Fabio Yanitchkis Couto and Laura Norbert Costa, attorneys with the Brazilian firm of Pinherio Guimaraes, who stated that their firm issued a letter to James Tanenbaum informing him of the firm's ultimate conclusion that "the LTN was probably counterfeit" and that even if "the LTN was authentic, the LTN was not redeemable due to the passage of the statute of limitation on the right to enforce the LTN." Attached to the affidavit was a true and correct copy of the letter. The third and final affidavit was executed by Appellant who stated that (1) Appellee represented that the LTN bonds *were genuine and in force*; that (2) he subsequently contacted Merrill Lynch Capital Markets and Emerging Markets Groups as well as Credit Suisse Capital Markets & Gaming Groups and was told that the bonds were fraudulent; and that (3) he paid the Brazilian firm of Pinheiro Guimaraes for a report that concluded the bonds were probably counterfeit.

Appellee subsequently filed Plaintiff's Motion to Strike or Disregard Parol Evidence. Appellee claimed that Appellant could not use the parol evidence contained in the affidavits to vary the plain and unambiguous language of the parties' agreement in order to impose representations or warranties regarding the "speculative" bonds that were expressly disclaimed by the parties as part of their bargain.

At the summary judgment hearing, Appellee's counsel argued that parol evidence regarding whether the bonds were legitimate was not relevant because the parties' agreement expressly provided that it was for the sale of a membership interest in LDRK and that no representations were made regarding the value of the bonds held by LDRK. Appellant's counsel responded that the seminal issue in the case was whether the bonds were genuine, fraudulent, or counterfeit and that the affidavits submitted by Appellant were sufficient to create a genuine issue of material fact as to whether the bonds were genuine so as to defeat Appellee's summary judgment motion. Appellee's counsel replied that the agreement itself refuted Appellant's assertion that the legitimacy of the bonds was a fundamental issue.

3

Following the hearing, the trial court entered a Summary Final Judgment for Plaintiff. Upon finding that there was no genuine issue of material fact and that Appellee was entitled to judgment as a matter of law, the trial court granted Appellee's motion for summary judgment and entered judgment in favor of Appellee.

Appellant then filed a motion for rehearing, which claimed that the judgment was not final because it failed to address and dispose of Appellant's counterclaim. Appellee responded by submitting a proposed amended judgment addressing the issues raised in Appellant's motion for rehearing and requested that the court enter the proposed amended judgment and deny the rehearing motion.

The trial court denied Appellant's motion for rehearing and entered an Amended Summary Final Judgment for Plaintiff, which included additional findings of fact. Specifically, the court found that (1) no term in the contract conditioned Appellant's obligation to pay on the value of the LTN bonds; and that (2) "the plain and unambiguous language of the Contract expressly disclaimed any representation regarding the value of the LTN bonds insomuch as it provided that 'no representations as to the Market Value' of those bonds was [sic] made by Plaintiff to Defendant, and that Defendant's interest in the bonds was 'strictly speculative.'" Accordingly, the court reaffirmed that Appellee was entitled to summary judgment, entered judgment in favor of Appellee, and ordered that Appellant take nothing on his counterclaim. This appeal followed.

II.

Because a motion for summary judgment requires the trial court to determine whether the movant is entitled to judgment as a matter of law, the granting of such a motion is reviewed de novo. *Chirillo v. Granicz*, 199 So. 3d 246, 252 (Fla. 2016); *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000); *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1029 (Fla. 1st DCA 2002). "Where no material facts are in dispute and the 'determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be

4

drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment.'" *Holmes v. Fla. A & M Univ. ex rel. Bd. of Trs.*, 260 So. 3d 400, 403 (Fla. 1st DCA 2018) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092 (Fla. 1st DCA 1999)). "However, '[w]here the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment.'" *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) (quoting *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. 1st DCA 1987)). The initial determination of whether the contract term is ambiguous is a question of law for the court. *Holmes*, 260 So. 3d at 404; *Strama*, 793 So. 2d at 1132. Contractual ambiguities are either patent or latent. *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 715 (Fla. 4th DCA 2017). "A patent ambiguity is intrinsically apparent on the face of the document due to 'the use of defective, obscure, or insensible language.'" *Id.* (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995)). In contrast, a latent ambiguity arises "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Thompson v. Watts*, 111 So. 3d 986, 989 (Fla. 1st DCA 2013); *Barnwell v. Miami-Dade Cnty. Sch. Bd.*, 48 So. 3d 144, 145–46 (Fla. 1st DCA 2010). "As a general rule, evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity." *Thompson*, 111 So. 3d at 989.

In this case, Appellant claims that the trial court erred in granting Appellee's motion for summary judgment because a genuine issue of material fact existed as to whether Appellee falsely represented that the LTN bonds were valid. Appellee responds that the trial court properly granted his motion for summary judgment because the plain and unambiguous language of the parties' agreement disclaimed that any representation had been made regarding the value of the speculative bonds. Specifically, Appellant acknowledged in the agreement that "he independently reviewed the information posted on the website www.tesouro.fazenda.gov.br prior to this agreement and that no

5

representations as to the Market Value were made by [Appellee] and [Appellant's] interest in these bonds [wa]s strictly speculative." However, Appellant counters that the agreement's failure to define "Market Value" and "speculative" created a latent ambiguity as to whether the disclaimer negated his claim for fraudulent inducement, requiring the consideration of parol evidence.

The Florida Supreme Court in *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (1941), addressed the issue whether contractual language barred a claim for fraudulent inducement. In that case, the court held that the clause in a lease—which provided that its execution was not governed or influenced by any representations of the lessors as to the earning capacity of the leased property and that the lessee was guided only by its own judgment without influence, representation, fraud, or duress by the lessors—did not estop the lessee from seeking rescission of the lease on the ground that it was procured by the lessors' fraudulent representations as to previous gross earnings of property. *Id.* at 690. In doing so, the court explained:

> To hold that by the terms of the contract which is alleged to have been procured by fraud, the lessor could bind the lessee in such manner that lessee would be bound by the fraud of the lessor would be against the fundamental principles of law, equity, good morals, public policy and fair dealing. It is well settled that a party can not [sic] contract against liability for his own fraud. We do not mean by this, however, to hold that a contract may not be made incontestable by the terms thereof on the ground of fraud. We recognize the rule to be that fraud in the procurement of a contract is ground for rescission and cancellation of any contract unless for consideration or expediency the parties agree that the contract may not be cancelled or rescinded for such cause, and that by such special provisions of a contract it may be made incontestable on account of fraud, or for any other reason. The clause of the contract here relied on does not stipulate that the lease may not be rescinded for fraud, but it does stipulate 'and that no verbal agreements, stipulations, representations, exceptions or conditions

6

whatsoever have been made or entered into in regard to the above described property which will in any way vary, contradict or impair the validity of this lease, or of any of the terms and conditions herein contained.' This provision in the contract does not make the contract incontestable because of fraud, but evidences an agreement between the parties that no fraud had been committed. We think there is clearly a distinction in the effect of a stipulation of a contract which recognizes that fraud may have been committed and stipulates that such fraud, if found to have been committed, should not vitiate the contract, and one in which the parties merely stipulate that no fraud has been committed and that neither party has relied upon the representations of the other party made prior to the execution of the contract.

*Id.* at 690–91 (citations omitted). Courts have construed this decision as standing for the proposition that "one can avoid a fraudulent inducement claim only by contract language which specifically and explicitly negates the right to bring such a claim." *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517, 519 (Fla. 4th DCA 2011); *accord Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 F. App'x 865, 875 (11th Cir. 2018); *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027–28 (11th Cir. 2017); *Onemata Corp. v. Rahman*, No. 20-cv-62002-WPD, 2021 WL 5175544, at \*4 (S.D. Fla. Oct. 12, 2021); *Best Fabrications, Inc. v. Navistar, Inc.*, No. 8:19-cv-815-T-24TGW, 2019 WL 9089595, at \*2 (M.D. Fla. June 3, 2019); *but see Billington v. Ginn-La Pine Island, Ltd.*, 192 So. 3d 77, 83 (Fla. 5th DCA 2016) (attempting to reconcile *Oceanic Villas* with an earlier Florida Supreme Court decision on the basis that a "merger" clause negates a fraud claim but a "non-reliance" clause does not).

Appellant claims on appeal that he alleged a viable claim for fraud in the inducement, even though his counterclaim below was not explicitly designated in those words. "It is axiomatic that fraudulent inducement renders a contract voidable, not void." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000). As a result, "Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages,

7

whereby the party ratifies the contract." *Id.* Appellant sought damages instead of rescission. Although no case law has been uncovered expressly limiting *Oceanic Villas* to fraudulent inducement claims seeking rescission, the Fourth District in two cases involving contractual "as is" clauses distinguished between fraudulent inducement claims seeking rescission and those seeking damages. In both cases—which involved fraudulent inducement claims seeking damages—the court applied the following principle of law: "[A] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Fla. Holding 4800, LLC v. Lauderhill Mall Inv., LLC*, 317 So. 3d 121, 123 (Fla. 4th DCA 2021); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005). However, the Second District recently applied *Oceanic Villas* to a fraud claim which sought damages or, alternatively, rescission. *NM Residential, LLC v. Prospect Park Dev., LLC*, 336 So. 3d 807 (Fla. 2d DCA 2022).

To the extent that Appellant raises a claim of fraud in the inducement, we conclude that the disclaimer or "no-reliance" clause in the parties' agreement does not preclude Appellant's claim because the clause neither (1) specifically and explicitly negates the right to bring such a claim; nor (2) adequately covers or expressly contradicts Appellee's alleged representation that the bonds were valid. While the parties' agreement disclaimed that any representations had been made regarding the "Market Value" of the "speculative" bonds, it did not go so far as to disclaim that the bonds were genuine. On that basis, the trial court erred in granting summary judgment for Appellee. To the extent Appellant sought to introduce parol evidence, this was unnecessary because there is no latent ambiguity in the parties' agreement.

### III.

Thus, the trial court erred in granting Appellee's motion for summary judgment because the disclaimer language in the parties' agreement did not negate Appellant's counterclaim for fraudulent inducement based on the alleged invalidity of the LTN bonds. Accordingly, we reverse and remand for further proceedings.

REVERSED and REMANDED.

ROWE, C.J., and LONG, J., concur; JAY, J., concurs with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

JAY, J., concurring.

I agree that the disclaimer language in the parties' agreement did not negate Appellant's counterclaim for fraudulent inducement based on the alleged invalidity of the LTN bonds. I write to further note that Appellant also appears to allege fraud in the performance of the contract, which would constitute a breach of the contract. *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712 (Fla. 5th DCA 1998). If Appellee represented that the LTN bonds were genuine—without actual knowledge of the alleged falsity of the statement—and Appellant subsequently determined that the bonds were counterfeit, Appellant would have a breach of contract claim. *See Johnson v. Bokor*, 548 So. 2d 1185, 1186 (Fla. 2d DCA 1989).

The issue would then become whether the disclaimer language in the parties' agreement negated a claim for breach of contract based on the alleged invalidity of the LTN bonds. Appellee made no attempt to counter Appellant's affidavits challenging the validity of the bonds and asserted that the bonds' legitimacy was irrelevant because the parties' agreement was for the sale of LDRK, which owned the bonds, and expressly disclaimed that any representations were made regarding the bonds' value. Appellant responds that the agreement was for the sale of the bonds because the bonds were the only asset of LDRK. This argument is consistent with the language of the agreement, which states that LDRK owns the bonds—without referencing any other assets.

In a contract for the sale of securities, there is an implied warranty that the securities are genuine. *See Meyer v. Richards*,

9

163 U.S. 385, 405–15 (1896) (holding that under the common law, in a contract for the sale of commercial paper, there is an implied warranty that the paper is what it purports to be); 17 *Williston on Contracts* §51:85 (4th ed.) (recognizing that in the sale of securities, the law charges the seller with certain implied warranties, including that a security is genuine and in all respects what it purports to be). While the parties' agreement disclaimed that any representations were made regarding the "Market Value" of the "speculative" bonds, it did not go so far as to deny that the bonds were genuine. Because the disclaimer language did not negate a claim for breach of contract based on the alleged invalidity of the bonds, this was an additional reason why summary judgment was improper.

_____

Bart A. Houston, Fort Lauderdale, for Appellant.

T. A. Borowski, Jr. and Darryl Steve Traylor, Jr. of Borowski & Traylor, P.A., Pensacola, for Appellee.